**J.D. HAMILTON, Plaintiff–Appellee,**

v.

**1ST SOURCE BANK,
Defendant–Appellant.**

No. 89–2615.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1990.

Decided Dec. 27, 1990.

Philip Marshall Van Hoy, Van Hoy & Reutlinger, Charlotte, N.C., for defendant-appellant.

William L. Auten, Charlotte, N.C., for plaintiff-appellee.

Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge, sitting en banc.*

WILKINSON, Circuit Judge:

We must here decide when the statute of limitations for filing age-based pay discrimination claims with the Equal Employment Opportunity Commission begins to run under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. Plaintiff Hamilton argues that a "discovery" rule applies to the statute of limitations in 29 U.S.C. § 626(d), i.e., that the limitations period does not begin to run until an employee discovers, or should have discovered, that he was a victim of pay discrimination. We hold that, under the plain and unequivocal language of the statute, the 180–day period for filing claims begins to run from the time of the alleged discriminatory act, and that Hamilton's claim of pay discrimination is therefore time-barred.

I.

J.D. Hamilton began working for 1st Source Bank as a vice-president in the Truckers Bank Plan division. He commenced employment in 1980 at the age of fifty-three. On April 21, 1986, the bank fired Hamilton without advance notice, claiming that he had failed to perform his duties. Hamilton filed a timely complaint

* Judge Niemeyer did not participate in the decision of this case.

with the Equal Employment Opportunity Commission (EEOC) alleging that he had been discharged because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. The EEOC failed to commence enforcement proceedings within sixty days and Hamilton filed suit in the United States District Court for the Western District of North Carolina. *See* 29 U.S.C. § 626(d).

In May 1987, in the course of discovery, Hamilton learned that he had received a lesser salary than younger vice-presidents who were in his job category. He then filed a new complaint with the EEOC on September 16, 1987, seventeen months after his discharge, alleging pay discrimination. Again, the EEOC did not commence enforcement proceedings within sixty days. The district court allowed Hamilton to amend his complaint to incorporate the pay discrimination claim.

The case was tried to a jury in June 1988. The jury found that the bank had discriminated against Hamilton on the basis of age both by paying him a relatively lower salary and by discharging him. It awarded him $15,135 in damages on the pay discrimination claim and $99,000 in back pay for the discriminatory discharge. Because the jury found that the bank had willfully discriminated against Hamilton when it fired him, the district court entered an additional judgment of $99,000 in liquidated damages on that claim. *See* 29 U.S.C. § 626(b).

A panel of this court affirmed the jury verdict but set aside plaintiff's recovery of prejudgment interest on the discharge claim, inasmuch as liquidated damages had already been awarded. *Hamilton v. 1st Source Bank*, 895 F.2d 159, 165–66 (4th Cir.1990). The panel ruled that Hamilton's pay discrimination claim was not time-barred under § 626(d), reasoning that the 180–day statute of limitations for a pay discrimination charge does not begin to run until an employee "discovers or by exercise of reasonable diligence could have discovered that she or he was a victim of pay discrimination." *Id.* at 165. The period for recovery of back pay on the pay discrimination claim was limited to two years prior to the filing of the original complaint. 1st Source Bank petitioned for rehearing *en banc*, arguing that the "discovery" rule was contrary to congressional intent as well as circuit precedent, and contending that Hamilton's charge of pay discrimination was time-barred. The bank additionally requested a new trial on the discharge claim on the ground that consideration of the pay claim tainted the entire jury verdict.

## II.

Title 29 U.S.C. § 626(d) provides in relevant part that:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge *shall* be filed—
> (1) within 180 days after the alleged unlawful practice *occurred....*

(Emphasis added.) The issue we confront is one of simple statutory construction. The question is whether Congress meant what it plainly and unequivocally said in the Act, that all charges of pay discrimination *shall* be filed within 180 days of the *occurrence* of the alleged violation. We hold that Congress' command is clear and unambiguous, and that Hamilton's claim of pay discrimination is time-barred.

We distinguish at the outset the question of when the statute of limitations begins to run from whether the statute can equitably be tolled under certain compelling circumstances. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Hamilton has repeatedly stated that he is not advancing claims of equitable tolling or estoppel. Thus the only question before this court is when the limitations period began to run on Hamilton's pay discrimination claim.

The "discovery" rule that Hamilton would have us adopt completely abandons the statute. Section 626(d) establishes a period of 180 days for plaintiffs to file claims with the EEOC, starting from the time "the alleged unlawful *practice occurred*" (emphasis added), not from the

time that the employee discovered its discriminatory nature. The language is clear, unlike that of other statutes couched in vaguer terms. *See, e.g.,* 28 U.S.C. § 2401(b) (Federal Tort Claims Act filing period commences when "such claim accrues."). Moreover, when Congress has intended a discovery rule, it has proven capable of writing one. *See, e.g.,* 41 U.S.C. § 55(b) (filing period runs from "the date on which the United States first knew or should reasonably have known that the prohibited conduct had occurred"); 22 U.S.C. § 4134(a) (excluding from the filing period "any time during which ... the grievant was unaware of the grounds for the grievance and could not have discovered such grounds through reasonable diligence"). In short, we decline to append to § 626 what Congress did not place there.

A discovery rule would do further violence to the statute by making the 180-day filing period more the exception than the rule. An "occurrence" is a discrete event, whereas a plaintiff's acquisition of knowledge is a continuing process. One can never be sure exactly when on that continuum of awareness a plaintiff knew or should have known enough that the limitations period should have begun. A discovery rule thus substitutes a vague and uncertain period for a definite one. One need look no further than the facts of this case to see the violence such an elastic approach works on the statute: Hamilton did not bring his claim until seventeen months after his discharge, roughly three times the length of the filing period Congress envisioned.

Recent Supreme Court cases support the view that the time period in § 626(d) commences with the occurrence of the alleged unlawful practice. In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court considered when such an act "occurs" in the context of a university professor's discriminatory discharge claim under Title VII of the Civil Rights Act of 1964.[1] The Court held that the alleged discrimination had occurred when the university denied the professor tenure and informed him of that act, a date over a year before his last day of work. The Court emphasized that "even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later ... 'the proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful.' " *Id.* at 258, 101 S.Ct. at 504 (quoting *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir.1979)) (emphasis in original); *see also Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (limitations period began to run when administrators received advance notice that their appointments would be terminated in a few weeks, not when their appointments actually ended).

Much the same reasoning prevailed in a more recent case. In *Lorance v. A T & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), a group of female employees who had been demoted during an economic slowdown challenged under Title VII a seniority system that had been in effect for four years. The Court began by "identify[ing] precisely the 'unlawful employment practice' " of which the women complained. *Id.* 109 S.Ct. at 2264 (citing *Ricks,* 449 U.S. at 257, 101 S.Ct. at 503). Because the alleged discriminatory act occurred with the adoption of the seniority system four years earlier, the Court held the employees' claim time-barred, even though the discriminatory effects were not evident until years afterwards.[2] *Id.* 109 S.Ct. at 2265.

Thus, in applying the statute of limitations contained in 29 U.S.C. § 626(d), courts must first identify the alleged unlawful act. The date of that act marks the time from which the 180 days are counted. To

---

1. Title VII also requires plaintiffs to file charges with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e–5(e).

2. The dissent simply misreads these cases in arguing the statute of limitations should begin when Hamilton was aware of the discrimination. *Ricks* and *Lorance* discuss notice of the allegedly discriminatory *acts,* not awareness of discrimination, either in effect or intent.

the extent that notice enters the analysis, it is notice of the employer's actions, *not* the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period. This circuit has faithfully followed that criterion in discriminatory discharge cases, wherein we have counted the 180 days from either the time of discharge or from the moment the employee received advance notice of the pending discharge. *See, e.g., English v. Pabst Brewing Co.,* 828 F.2d 1047 (4th Cir.1987); *Morse v. Daily Press, Inc.,* 826 F.2d 1351 (4th Cir.1987); *Felty v. Graves–Humphreys Co.,* 785 F.2d 516 (4th Cir.1986); *Greene v. Whirlpool Corp.,* 708 F.2d 128 (1983); *Price v. Litton Business Systems, Inc.,* 694 F.2d 963 (4th Cir.1982). In *Felty,* for example, we held that "lack of knowledge of the discriminatory nature of an employment decision and the reasons for that lack of knowledge ... play no part in determining the beginning of the statutory limitation period." *Felty,* 785 F.2d at 519.

### III.

Hamilton urges our departure from this settled principle because of a perceived difference between discriminatory discharge claims and discriminatory pay claims. He argues that an employee would be alerted to a possible discriminatory motive for a discharge, whereas an employee has no reason to suspect a discriminatory pay practice upon receiving a paycheck.

We think, however, that this is "a distinction without a difference." *Hamilton,* 895 F.2d at 168 (MacKenzie, J., dissenting). Even to debate the distinction is to miss the point. An occurrence rule is based upon the supposition that the adverse act serves to put the employee on notice. That supposition applies equally to claims of discriminatory discharge and unequal pay. Certainly nothing in § 626(d) distinguishes between them. On the one hand, one might argue that the traumatic and public nature

of a discharge affords the affected employee more reason to inquire about its possible discriminatory character. On the other hand, one might contend that unequal pay claims provide an employee the greater incentive to inquire: the typical pay violation occurs over a longer period of time than the typical discharge, and the employee in a pay case is in constant contact with those who may provide evidence of discriminatory treatment.[3] To attempt to determine how much notice every different potential violation of the ADEA provides is, however, a hopelessly subjective exercise in which we shall not indulge. It would soon mire courts in speculative debates about the exact degree of employee awareness of various categories of employer practices—a debate that would strip statutory limitations periods of the simplicity and predictability that serviceable legal rules require.

Statutes of limitations are not mere technicalities. Rather, they "have long been respected as fundamental to a well-ordered judicial system." *Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980). They are designed not to defeat justice, but to promote it by preventing "surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). By encouraging parties to file their claims promptly, statutes of limitations protect litigants from the potential errors of witness recall that might otherwise result. They reflect the need to have a point at which the possibility of litigation is past, and in due course they replace the uncertain prospects of a potential litigant with repose. *See generally Gould v. United States Dep't of Health & Human Servs.,* 905 F.2d 738 (4th Cir.1990) (en banc).

---

**3.** Hamilton argues in his brief that he could not possibly have known of the pay discrimination in a timely fashion because the bank regards it as "prudent business policy" to discourage employees' sharing of salary information. This argument is unavailing, however. First, neither

the policy nor the extent of any adherence thereto has been adequately developed by Hamilton. Second, the presence of such a policy is not relevant to when the alleged discriminatory act occurred, which is the sole question in this case.

Of course, statutes of limitations may impose hardships upon individual litigants who discover salient facts after the statutory deadline. Such hardships are inherent in their nature. Every limitations period reflects a tension between the dual goals of protecting valid claims and prohibiting pursuit of stale ones. Congress afforded potential plaintiffs under the ADEA what it considered to be a reasonable time to present claims. In setting a 180–day period in which employees could file complaints with the EEOC, Congress considered and balanced the competing policies of investigating and settling claims promptly, and protecting the aged from discrimination. We cannot second-guess its judgment. To the extent that parties are dissatisfied with Congress' determination, they should address their arguments to a legislative forum. As recently as 1988, Congress revisited the ADEA and temporarily extended the statute of limitations set forth in 29 U.S.C. § 626(e) so that claimants would not lose their right to file a civil suit while waiting for the EEOC to take action. *See Age Discrimination Claims Assistance Act of 1988*, Pub.L. No. 100–283, 102 Stat. 78 (1988). Such action demonstrates both that Congress is aware of how the ADEA is functioning, and that it will change the law if it perceives that the balance is askew.

We therefore reject the "discovery" rule urged by Hamilton and return to the language of § 626(d). The last possible time that pay discrimination could have occurred was the date when Hamilton received his final paycheck. Hamilton had 180 days from that event to bring his claim to the EEOC. He did not do so and his claim is therefore time-barred.

## IV.

Accordingly, we remand Hamilton's pay discrimination claim to the district court with directions to dismiss it as untimely filed. We do not believe, however, that consideration of the pay discrimination claim tainted the jury's verdict with regard to the discriminatory discharge or the amount of damages therefrom, and we therefore deny the bank's request for a

new trial on that claim. Because the bank placed only these issues in dispute, the remainder of the panel's opinion continues in effect.

The judgment is affirmed in part, reversed in part, and remanded with directions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

SPROUSE, Circuit Judge, concurring in part, and dissenting in part:

I respectfully dissent to that part of the opinion which holds that the § 626(d) 180–day statute of limitations barred Hamilton from pursuing his pay discrimination claim. I concur in the rest of the opinion.

I, of course, agree that statutes of limitations are indispensable components of the judicial system. I think it is equally self-evident that such statutes become more useful tools when, in appropriate cases, they are complemented by a discovery rule. In my view, this is such a case, and we have the opportunity to establish a rule which would affect the underlying purpose of controlling litigation in this civil rights area as well as advancing the remedial purposes of the ADEA without reducing statute of limitations principles to mere mechanical exercises. While recognizing that a limitations statute is designed to operate with some rigidity, courts have nonetheless avoided purely mechanical applications when the results would be solely to advantage superiorly positioned litigants. In my view, a rigid application of the 180–day rule of § 626(d) in pay discrimination cases achieves precisely those results that the equitable nature of "discovery" rules discourages. Recognition of a discovery rule in this § 626(d) context, on the other hand, would balance the underlying objectives of statutes of limitations, by not subjecting a defendant to suit once evidence to rebut the suit has become stale, yet advancing the congressional policy that disadvantaged plaintiffs not be artificially hindered from pressing civil rights claims.

The majority opines, with justification, that Congress is capable of specifically en-

grafting a notice requirement on statutes of limitations if it is so desired. Of course, I do not dispute that notion, and I agree that Congress declined to specify a discovery requirement in drafting § 626(d). It is equally clear, however, that Congress has declined to include specific notice requirements in other statutes that have, nonetheless, been interpreted as impliedly containing them. For example, § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), reads in relevant part:

> no complaint shall issue based upon any unfair labor *practice occurring* more than six months prior to the filing of the charge with Board....

(Emphasis added.) Yet, in *NLRB v. Allied Prod. Corp. Richard Bros. Div.,* 548 F.2d 644 (6th Cir.1977), the Sixth Circuit held that the limitations period for an action under the National Labor Relations Act begins to run " 'when the claimant discovers or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation].' " *Id.* at 650 (quoting *Hungerford v. United States,* 307 F.2d 99, 102 (9th Cir.1962), *overruled on other grounds, Ramirez v. United States,* 567 F.2d 854, 857 (9th Cir. 1977)). The statute at issue in *Allied* employed language similar to § 626(d)'s *"practice occurred"* and yet the court held the time limitation subject to a discovery rule.

In my view, the majority's focus on a plain language analysis to bar a "discovery" approach to the § 626(d) limitations period conflicts with the Supreme Court's analysis in both *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). In *Ricks,* the Court continually emphasized that Ricks' notice of the discriminatory action was an essential underpinning of the opinion. The majority here stresses that a plaintiff's acquisition of knowledge by notice is a continuing process which does not fit neatly into an emphasis on occurrence as a bare tangible event. The majority opinion, however, fails to explain why advance notice of the bare event fits neatly into the plain meaning of

"occurrence" when it results in constriction of the statutory time (as in *Ricks* ), but an absence of notice would be antithetical to "occurrence" when the inclusion of notice in the meaning of occurrence would result in the expansion of the statutory time.

In support of the position that a discovery rule would be out of place in § 626(d), the majority relies on the Supreme Court cases of *Lorance v. A T & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *Chardon, supra;* and *Ricks, supra,* and on our decision in *Felty v. Graves–Humphreys Co.,* 785 F.2d 516 (4th Cir.1986). I think the reliance is misplaced.

In *Ricks,* the Supreme Court instructed "that the limitations periods should not commence to run so soon that it becomes difficult for a layman to invoke the protection of the civil rights statutes." *Id.* 449 U.S. at 262 n. 16, 101 S.Ct. at 506 n. 16. The Court found it significant that Ricks was adequately forewarned and a fair reading of the opinion indicates that notice is important in preserving the tenor of statutes like the ADEA which were enacted "in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979) (quoting *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972)).

*Chardon* involved termination of employment, contrasted to the denial of tenure considered in *Ricks.* As far as *Chardon* is implicated here, however, the Court reiterated that notice was an integral part of the operative decision.

In *Lorance,* the Supreme Court indicated that the limitations period for a suit alleging discrimination flowing from application of a seniority system, nondiscriminatory in form and application, but adopted for discriminatory purposes, begins to run at the time of its adoption. *Lorance* involved a collective bargaining provision implemented on a specific and ascertainable date. While the harm from the resulting policy— the demotion of female employees—result-

ed much later, the policy was a product of collective bargaining and perforce available for the inspection of all employees.

*Felty* involved an allegation of age discrimination in a discharge. Felty contended that he was not aware until after his termination that his employer was engaged in a discriminatory practice of dismissing its older employees. There is no question, however, that at termination Felty was aware of the operative facts which implemented the discrimination—*i.e.*, his discharge, the discriminatory act. The operative fact in this pay discrimination case is the act of paying Hamilton less than younger employees. Unlike the discharge in *Felty*, the mere receipt of a paycheck simply did not make him aware of the operative fact which constituted the discriminatory act.

It is likewise true that *Ricks* focuses on the discriminatory act rather than the consequences that follow from the discrimination, but that focus, directed here, reinforces rather than weakens Hamilton's contention that unawareness *vel non* of a pay discrimination is critical. While the discrimination was underpaying Hamilton in violation of the ADEA, the Bank's discriminatory act was not the delivery of Hamilton's paycheck to him, but the decision to pay him less than younger employees doing comparable work. Upon receipt of the paycheck, Hamilton, of course, knew that the Bank was paying him but he did not know that it was paying him less and he was not aware of the Bank's discrimination until pretrial discovery. The issuance of the paycheck is itself only an act that flows from the discrimination—and which, without more, does not communicate the discrimination. Adherence to *Ricks* requires that the start of the statute of limitations be when Hamilton should have been aware of the discrimination—not merely aware of an act in the chain of discrimination. *Ricks* and *Chardon* support an approach that notice of the decision to take a discriminatory pay action is the key and recognition of a discovery rule in this case is consistent with that approach.

I am also convinced that the decision to apply a "discovery" rule *vel non* should not be mechanically considered in the same manner in all civil rights litigation. I think, for example, that policy differences inherent in discharge cases, as contrasted to pay discrimination cases, compel application of different general rules, *i.e.*, recognizing a notice requirement in pay cases but not in discharge cases. In discharge cases, the adverse nature of the act is inherent and obvious. Termination of employment communicates to a discharged employee that he is being treated differently from other employees, for he or she realizes that other co-workers have been retained and he or she has not. Termination prompts immediate inquiry into the employer's rationale for taking such adverse action. That adverseness is not inherent in the issuance of a paycheck especially when the paycheck was not unlike those Hamilton had previously received. Due to its confidential nature, a paycheck does not automatically trigger the requisite act of contrast and comparison to tell whether its conveyance is even potentially the adverse act the majority considers the catalyst for the running of the statute. Importantly, the Bank concedes its policy of avoiding exchange of pay information between its employees and it is uncontradicted that Hamilton did not know of the discriminatory underpayment until the Bank revealed the discrimination during pretrial discovery conducted in his discharge case.

To focus on the nature of the protected civil right in deciding whether to apply a discovery rule is to follow the same modern approach developed by courts in applying statutes of limitations generally. Discouraging litigants from sleeping on their rights, avoiding stale claims, and expediting litigation—the immediate objectives of statutes of limitations—help ensure that the fruits of justice are distributed evenhandedly. For some causes of action, this requires an unadorned application of time restrictions. Congress and the courts recognize, however, that it is often necessary to protect the unwary and the unsophisticated from a harsh application of such time restrictions. This depends in large

part on the substantive remedy grounding the litigation and, of course, varies from one jurisdiction to another. Courts have recognized the concept for some time, however, and in appropriate circumstances have applied it to prevent the limitations concept from becoming a mere tool of expediency. For example, in *Burnett v. New York Cent. R.R.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), the Supreme Court in a "tolling" case stated:

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights....

*Id.* at 428, 85 S.Ct. at 1054 (citations omitted).

The Court of Appeals for the District of Columbia Circuit applied the same reasoning in determining the applicability *vel non* of a discovery rule in an asbestos action involving a latent disease. *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C.Cir.1982).* In that context, the D.C. Circuit said:

Finally, we believe the discovery rule is sensibly based. Courts have long recognized that "[the] policy of repose, designed to protect defendants, is frequent-

ly outweighed ... where the interests of justice require vindication of the plaintiff's rights." *Burnett v. New York Central Railroad*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). *Id.* at 117. Finally, the Supreme Court's instruction in *Ricks* is worth repeating: "the limitations periods should not commence to run so soon that it becomes difficult for a layman to invoke the protection of the civil rights statutes." *Ricks*, 449 U.S. at 262 n. 16, 101 S.Ct. 506 n. 16. It is clear that statutes of limitations should not be so rigidly applied in civil rights causes of action as to hinder their invocation by those that remedial legislative acts are designed to protect.

Judge Phillips, Judge Murnaghan, and Judge Butzner authorize me to say that they join in this dissent.

---

* For comments on cases supporting various views, *see, e.g.,* Note, *Wilson v. Johns–Manville Sales Corp. and Statutes of Limitations in Latent Injury Litigation: An Equitable Expansion of the Discovery Rule,* 32 Cath.U.L.Rev. 471 (1983); *see also* Annotation, *Limitation of Actions: Time of*

*Discovery of Defamation as determining Accrual of Action,* 35 A.L.R.4th 1002 (1985), and cases cited therein; Annotation, *Time of Discovery as Affecting Running of Statute of Limitations in Wrongful Death Action,* 49 A.L.R.4th 972 (1986) and cases cited therein.