Max E. CUDDY, Plaintiff

v.

**WAL–MART SUPER CENTER, INC., Defendant.**

No. Civ.A. 96–208–A.

United States District Court, W.D. Virginia, Abingdon Division.

Feb. 3, 1998.

Bernard S. Via, III, Bristol, VA, for Max E. Cuddy, Plaintiff.

Kimberly W. Daniel, D. Eugene Webb Jr., Mays & Valentine, Richmond, VA, for Wal-mart Super Center, Inc., Defendant.

## OPINION

JONES, District Judge.

In this employment discrimination case, the plaintiff claims that he was denied employment by the defendant solely because of his age. The defendant has moved for summary judgment on both procedural and substantive grounds. First, the defendant argues that the action is barred because the plaintiff did not file a discrimination charge with the EEOC in a timely manner. The defendant also maintains that, on the merits, the plaintiff cannot show that the defendant's proffered nondiscriminatory reason for not hiring him was pretextual. While I find the plaintiff's administrative charge was timely, I agree that he has shown insufficient evidence for the case to proceed on the merits. Accordingly, I will grant the defendant's motion for summary judgment.

### I. Facts.

On September 5, 1995, the plaintiff, Max E. Cuddy, applied for a job with Wal–Mart Super Center, Inc., at its retail store in Bristol, Virginia. He filled out an application form, and stated that he sought a position in "shipping/receiving." His application was received by his friend, Nancy Houser, who worked as a cashier at the store. Houser conducted Cuddy's "pre-screening" interview, filled out a "pre-screening questionnaire" about him and passed the application on to Linda Johnson, a member of the store's personnel department, who also interviewed Cuddy.

According to Johnson, she was not impressed by Cuddy. She felt he did not have the "positive, upbeat attitude" Wal–Mart desires in its employees, and perceived that he was bitter about his last job, which he left under "unhappy circumstances." Notwithstanding her misgivings about offering Cuddy a job, Johnson allowed him to take the "Orion test"—a paper and pencil personality inventory—because he was Nancy Houser's friend. Johnson maintains that the test con-

firmed her earlier judgment that Cuddy was not a suitable employee, because it showed that he was a person "who believed the world owed him something."

Before Cuddy left the store, Johnson told him that someone would get in touch with him if there were "any opportunities for employment." In fact, however, it is uncontested that Johnson decided on that day that Cuddy would not be offered a job. She took Cuddy's application to her superior, Candy Earhart, the personnel manager at the store, and told Earhart that Cuddy was "not what we were looking for." Earhart responded, "fine."

The application form signed by Cuddy contained the following language, directly above the signature line:

> I understand that this application is good only for sixty (60) days from today's date. If I shall desire a position with the company after this application expires, it will be my responsibility to fill out a new application and file it with the company. Otherwise, the company will not consider me for employment after this application expires.

Cuddy did not file any further applications with Wal–Mart, although he says that on two unspecified dates in November and December, he went by the store and was told by Candy Earhart or Kim Cunningham, a later personnel manager, that no jobs were available.

In September 1995, at the time of his application, Cuddy was fifty-four years old. In March 1996, Nancy Houser told Cuddy's wife, Sheila Cuddy, that Wal–Mart was seeking to fill open positions with "young people who are hustlers."[1] Shortly thereafter, Cuddy contacted the Equal Employment Opportunity Commission ("EEOC") to inquire about filing a charge of age discrimination. On April 18, 1996, in a telephone call with the EEOC, Cuddy provided the agency with details concerning the alleged discrimination. He signed a formal written charge on May 6, 1996.

---

1. Mrs. Cuddy also tape recorded several phone calls which she placed to Houser in which Cuddy elicits Houser to speak about Wal–Mart's hiring practices. Although the quality of the tape recording is uneven and Houser's voice is barely audible on the fourth call placed, a woman, whom Mrs. Cuddy identifies as Nancy Houser, clearly indicates that she felt Wal–Mart's Bristol store discriminated against older people and blacks.

The EEOC terminated its investigation of Cuddy's charge and issued him a right to sue letter on September 30, 1996. Cuddy thereafter filed this action. After discovery, the defendant filed the present motion for summary judgment, contending that Cuddy's action is barred because his charge of discrimination was not filed within 180 days of September 5, 1995, the date Johnson decided not to hire him. Wal–Mart also claims that Cuddy cannot show that the reason given for not hiring him was a pretext for intentional age discrimination. The parties have briefed the issues and submitted oral argument and the motion is now ripe for decision.

## II. Summary Judgment Standard.

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden to identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those determinative of the outcome of an issue as determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the movant has documented the absence of a triable issue, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must interpret all facts in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

## III. Statute of Limitations.

■ Wal–Mart first contends that Cuddy did not file a timely administrative charge with the EEOC and thus his suit is barred.

■ Pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621–634 (West 1995 & Supp.1997) ("ADEA"), a charge of discrimination must be filed with the EEOC within 180 days "after the alleged unlawful practice occurred." 29 U.S.C.A. § 626(d)(1).[2] While not jurisdictional, the failure to file a timely ADEA charge generally precludes a later suit on the claim. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1048 (4th Cir.1987).

■ In this circuit, there is no "discovery rule" applicable to the ADEA statute of limitations, and thus the time period may run before the charging party finds any proof of discrimination. *Hamilton v. 1st Source Bank*, 928 F.2d 86, 87–88 (4th Cir.1990) (en banc). Accordingly, Cuddy may not rely upon the information he learned in March of 1996 to extend the filing period.

■ On the other hand, it is equally settled that the filing period only starts when the charging party learns of the employer's action, even though the employer's discriminatory motivation may not yet be known. *Id.* at 89. For example, the statute of limitations begins to run when an employee receives advance notice of his discharge, even if the effective date of his termination is later. *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). As the Fourth Circuit has stated, "[t]o the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period." *Hamilton*, 928 F.2d at 89.

It is uncontested that Cuddy was told on September 5 that his application for employment was under active consideration. He had no reason to think otherwise at least until sixty days later when, on November 4,

2. In jurisdictions in which there is a "state deferral agency" under state law, the charging party has 300 days to file a charge of discrimination with the EEOC. 29 U.S.C.A. § 626(d)(2). There is an open question as to whether Virginia has a state deferral agency. *Compare Bolt v. Norfolk Southern Corp.*, No. 96cv85 (E.D.Va. July 31, 1997) (Virginia Council on Human Rights is state deferral agency) *with Tokuta v. James Madison Univ.*, 977 F.Supp. 763, 764 (W.D.Va.1997) (no state deferral agency in Virginia). Cuddy does not contend that the longer limitations period applies and accordingly, I need not decide the issue in this case.

his application expired and he had not been offered a job.[3] Wal–Mart's secret decision that Cuddy was unsuitable for employment cannot start the running of the limitations period; otherwise employers could manipulate the statutory time limit to effectively deny protected parties their rights under the ADEA.[4] While under existing precedent, Cuddy cannot extend the limitations period simply because he only later suspected that Wal–Mart unlawfully discriminated, he is at least entitled to know that a personnel action was taken before his filing period commences.

▐ Wal–Mart concedes that Cuddy's charge with the EEOC was effectively filed on April 18, 1996, when he provided the essential details of his claims in a telephone conversation which was noted on a log maintained by the EEOC.[5] Since the limitations period commenced at the earliest on November 4, 1995, the date when the application by its own terms became inactive, the charge was timely filed less than 180 days later, on April 18, 1996.[6]

### IV. Intentional Discrimination.

▐ The parties agree that since Cuddy's case depends solely upon circumstantial evidence, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny, applies. Wal–Mart concedes, for the purposes of its motion for summary judgment, that Cuddy can prove a prima facie case of age discrimination. An employer's negative, albeit subjective assessment of an applicant's performance constitutes a legitimate, non-discriminatory reason for an employment decision. See Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1130 (4th Cir.1995). Thus, in asserting that Cuddy was not hired because Johnson found him to be bitter and not upbeat, Wal–Mart has offered a legitimate nondiscriminatory basis for not hiring Cuddy. Accordingly, the sole issue before me is whether Cuddy has produced sufficient evidence to show that Wal–Mart's stated reason was pretextual and that in fact Wal–Mart engaged in intentional age discrimination by not hiring Cuddy. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Cuddy must show that age discrimination was more likely the reason for Wal–Mart's hiring decision than was Johnson's impression of Cuddy's personality. Tuck v. Henkel Corp., 973 F.2d 371, 374–5 (4th Cir.1992).

▐ "To establish a claim, the plaintiff must prove, with reasonable probability, that but for the age of the plaintiff, the adverse employment decision would not have been made. Age must have been a determining factor in the employment decision." Mitchell v. Data General Corp., 12 F.3d 1310, 1314 (4th Cir.1993). Cuddy asserts that he has sufficient proof of discrimination, based upon: (1) Nancy Houser's incriminating statements that Wal–Mart was seeking younger employees; (2) the absence of any negative comments about Cuddy in Johnson's interview notes; (3) Wal–Mart's hiring of younger employees following Cuddy's rejection; (4) Cud-

---

3. Cuddy claims that the limitations period did not commence until an unspecified day in December when he was told by a Wal–Mart representative that there were no job openings. Cuddy maintains that he did not read the application form carefully and was unaware that the application, by its own terms, was only active for 60 days. Nonetheless, he does not contend that his application was still being actively considered at the time in December when he inquired about his hiring status. Therefore, that date, whatever it was, cannot be the commencement of the limitations period.

4. Under Wal–Mart's logic, for example, a company could make an employment decision and by withholding information about that decision for more than 180 days, effectively deny an applicant any chance to challenge the decision.

5. Reply Mem. in Supp. of Mot. for Summ.J. 6 n. 3. See 29 C.F.R. §§ 1626.7(c)(3) (1997).

6. Cuddy also contends that the limitations period in this case is subject to equitable tolling and estoppel. Equitable tolling applies if the defendant attempted to deceive the plaintiff and the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge. English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir.1987). Equitable estoppel occurs where, "despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." Id. In view of my determination that the charge was timely, I need not address these claims.

dy's testimony that Johnson improperly administered the Orion personality test; and (5) Cuddy's denial of any bitterness about his prior employment. However, as the following discussion will show, none of these contentions adequately meets Cuddy's burden of showing pretext.

### A. Nancy Houser's Statements.

Sheila Cuddy, in her affidavit, states that in March 1996, Nancy Houser, who worked as a cashier and part time "employment screener" for Wal–Mart, told her that Wal–Mart was filling the jobs for which Max Cuddy had applied with "young people who were hustlers." Max Cuddy also seeks to admit evidence of conversations between Nancy Houser and his wife to show that Wal–Mart's Bristol store discriminated against older applicants for employment. Cuddy has filed a tape recording made by Mrs. Cuddy on which Houser indicated that Wal–Mart generally discriminated against older employees and specifically, that three Wal–Mart supervisors, Kim Cunningham, a woman named Valerie,[7] and Candy Earhart instructed Houser to discriminate on the basis of age when screening applicants.[8]

■ Wal–Mart argues that the tape recording and any transcript of it are inadmissible under Federal Rules of Civil Procedure 56(e) and Federal Rules of Evidence 802 and 901 because they are unauthenticated and hearsay. It is true that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. *See Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993). However, the tape recording is authenticated by Mrs. Cuddy's affidavit in which she avers that it contains conversations between herself and Houser. *See* Fed.R.Evid. 901(b)(1). Since Houser was a Wal–Mart employee, involved in application screening, her statements regarding Wal–Mart's employment practices arguably constitute a party admission and thus are not inadmissible hearsay. *See* Fed.R.Evid. 801(d)(2)(D); *Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.,* 896 F.2d 1233, 1242 (10th Cir.1990).[9]

Even if admissible, however, Houser's statements fail to establish pretext. First, nowhere on the tape or in Sheila Cuddy's affidavit is it alleged that Houser ever stated that age was a factor in Wal–Mart's specific decision not to hire Cuddy. Second, Houser does not provide any evidence challenging that Johnson found Cuddy's personality displeasing or bitter. Third, Houser's statement does not specifically claim that Wal–Mart sought young people for stocking clerks—the position for which Cuddy applied. Fourth, none of the three persons who allegedly instructed Houser to discriminate on the basis of age was responsible for the decision not to hire Cuddy; rather, Johnson alone made that decision. Absent evidence that Earhart, Valerie, or Cunningham were in-

---

**7.** Although Valerie's last name is not clear on the audio tape, Houser did note that Valerie was not there anymore.

**8.** In the third phone call on the tape provided to the court, Houser is recorded saying: "Seeing a good Wal–Mart store down here makes me realize just what kind of ... bigots they got running that store.... And I'm telling you, up there, if you're old they don't want you and if you're black they don't want you." Later in the same call, when prompted by Cuddy to discuss how she herself was disliked and poorly treated at Wal–Mart, Houser says, "Well, I muddied up the waters when I was on that interviewing screening committee back there and, and they, they kept telling me to—just to refer real young people, 18, 19 years old, is what they said, hustlers, and I wouldn't do it. I kept referring whoever I felt like would make a good employee and I didn't give a damn how old they were."

In the next phone call on the tape, Mrs. Cuddy asks Houser, "Was Mike Lewis the one who was telling you, uh, not to hire older people, or was it one of them girls back there?" Houser replies: "It was Kim Cunningham." Cuddy: "Kim Cunningham?" Houser: "And Valerie (inaudible) ... of course she ain't there no more.... And ... Earhart."

**9.** The plaintiff has advised the court that Houser cannot now be located and her deposition has not been taken. As one commentator has pointed out, the proper question is not whether judges are authorized to consider hearsay in relation to motions for summary judgment. Rather, the judge ought to be permitted to examine any evidence which would be admissible at a future trial if the case proceeded beyond summary judgment. *See* James Joseph Duane, *The Four Greatest Myths About Summary Judgment,* 52 Wash. & Lee L.Rev. 1523, 1524–54 (1996). Thus, it is likely that the Houser tape would be admissible at trial, at least over authenticity and hearsay objections, even if Houser never testified.

volved in the decision not to hire Cuddy, their statements are irrelevant and fail to prove pretext. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 276 (4th Cir.1995). Finally, Houser's statement was made after March 1996, when Cuddy's application was already inactive. Thus, even if Wal–Mart was favoring young applicants at that time, there is no evidence Johnson did so earlier when she evaluated Cuddy.

### B. Johnson's Interview Notes.

Cuddy takes notice of the fact that Johnson's interview notes do not contain any negative comments about Cuddy's personality—the reason she offers for denying him employment. However, Cuddy also acknowledges that the notes were devoid of either adverse or positive comments.[10] Moreover, an absence of negative comments about Cuddy's personality is not evidence of discrimination. Although Wal–Mart's proffered reason for denying Cuddy employment would certainly be substantiated if Johnson had contemporaneously recorded her perception that Cuddy was bitter, Cuddy retains the burden of proving discrimination and Johnson's lack of negative notes does not refute her representation that she found Cuddy unimpressive. Since Johnson spoke with Earhart immediately after interviewing Cuddy, it is possible that Johnson did not need to record her impressions about the candidate for memory's sake. Likewise, Johnson may not have needed to document her reasons for denying an applicant employment since she was empowered to unilaterally make such employment decisions and did not have to justify the decision to anyone.

### C. Statistics Regarding Those Actually Hired.

Cuddy contends that during the time when he applied to be a stocking clerk, Wal–Mart only hired individuals under the age of forty for those jobs. However, statistics about those hired are meaningless without a greater context. *See Carter v. Ball*, 33 F.3d 450, 456 (4th Cir.1994). Cuddy provides no data about the applicant pool as a whole, and specifically, Cuddy fails to show that the pool

of qualified applicants included individuals over forty. In order to draw any inferences from Wal–Mart's hiring decisions, one needs information about the entire qualified applicant pool. *See Henson*, 61 F.3d at 276. Likewise, the fact that Wal–Mart hired individuals who were younger than Cuddy does not refute Wal–Mart's claim that it denied Cuddy employment because he was bitter and not upbeat. Finally, Wal–Mart has shown that nearly twenty-seven percent of its Bristol store's employees are over the age of forty, a fact that runs counter to the notion that Wal–Mart has a generalized bias against older employees.

### D. Johnson's Administration of the Orion Test.

Cuddy alleges that in administering the Orion personality test, Johnson inappropriately instructed him to select answers at the extreme ends of a ten point scale rather than selecting moderate responses. While Cuddy has shown that such instructions were inappropriate, he has not shown that the instructions were motivated by discriminatory age animus. For example, there is nothing in the record to suggest that Johnson did not give the same instructions, however improper, to all applicants, regardless of age. Moreover, although Cuddy claims that he followed Johnson's instructions and would have answered questions differently but for those instructions, Cuddy offers no evidence to suggest that following the instructions negatively impacted his score on the Orion test or hindered his chances of securing employment.

### E. Cuddy's Perspective on His Attitude.

Cuddy also takes issue with Johnson's characterization of his personality as bitter. Cuddy denies that he was bitter about his past job and contends that he was upbeat and personable in his interview. However, Cuddy's subjective assessment of his interview performance is not relevant; it is the employer's impression in an interview that determines whether an applicant will be offered a position. *See Evans v. Technologies*

---

**10.** Johnson avers that the absence of positive notations indicates a poor interview.

*Applications & Serv. Co.,* 80 F.3d 954, 960 (4th Cir.1996) (plaintiff's opinion regarding his own qualifications does not raise genuine issue of material fact nor does it demonstrate pretext).

### V. Conclusion.

For these reasons, Cuddy has failed to show that there is a genuine issue for trial. Accordingly, I will grant Wal–Mart's motion for summary judgment.