**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 16 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JANICE E. HANLEN,

　　　　Plaintiff-Appellant,

v.

WILLIAM HENDERSON, Postmaster
General of the United States of
America,

　　　　Defendant-Appellee.

No. 99-1307
(D.C. No. 97-N-2086)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

　　　　After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal.　See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).　The case is

therefore ordered submitted without oral argument.

---

\* 　　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.　The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Janice E. Hanlen appeals the district court's entry of summary judgment in favor of defendant-appellee William Henderson, Postmaster General of the United States of America, on her claims of discriminatory discipline, retaliation, and sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e-17 and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

Hanlen is employed by the United States Postal Service (USPS) as a supervisor in the Broomfield, Colorado, post office. She was forty-eight years old in 1996, when the allegedly discriminatory incidents occurred. On March 17 of that year, Paul Lavender was appointed interim officer in charge of the Broomfield post office upon the sudden retirement of the postmaster. At the time, the Broomfield post office was rated as poor in the performance of customer services and other functions.

Prior to Lavender's arrival, Hanlen had certified the accuracy of information contained in thirty-nine daily customer service effectiveness reports, which are used to evaluate postal customer service. Based on information provided by delivery supervisors, Hanlen consistently certified that the Broomfield post office met the 8:30 a.m. deadline for distributing all mail to

customers' post office boxes. Upon his appointment, Lavender determined that, in fact, the deadline had seldom been met. He investigated the discrepancy and learned that Hanlen, under the former postmaster's improper instructions, made the arbitrary assumption that the distribution deadline applied only to mail that had been sorted and delivered to the post office box section by 7:15 a.m. and did not include mail that was still in the back of the post office. On April 19, Lavender proposed Hanlen's removal from the USPS for falsifying the effectiveness reports. He did not discipline the delivery supervisors who prepared the reports for Hanlen's certification. Hanlen appealed the proposed removal to the manager of post office operations.

Meanwhile, audits revealed two shortages for which Hanlen, as customer services supervisor, was considered ultimately responsible. The first, a shortage in stamp stock in the amount of $3,126.58, was found to be attributable to theft by an employee. The second, an account shortage in the amount of $242.37, was attributable to an error made by an employee Hanlen had assigned to the customer service window, in spite of the employee's failure to pass the certifying test for the position.

On May 18, Lavender removed Hanlen from her position, designated a male employee to replace her, and reassigned her to a position in the mail processing operation. As a result of this change, she was assigned a different work schedule

and denied access to her former office. Hanlen initiated contact with the USPS Equal Employment Opportunity office (EEO), alleging that the proposed removal and the reassignment were motivated by discrimination on the basis of sex and age.

On May 29, the manager of post office operations issued a letter of decision on Hanlen's appeal of the proposed dismissal, reducing the disciplinary action to a fourteen-day suspension. Although the manager determined that Hanlen's certification of the inaccurate effectiveness reports amounted to misconduct, he found mitigating circumstances in her lengthy and acceptable work history and in her assertion that she had been following the former postmaster's instructions on completion of the effectiveness reports. Hanlen again initiated contact with the EEO, repeating her earlier charges and also asserting that the suspension constituted sex discrimination. On June 7, Lavender issued Hanlen a letter of warning concerning the stock shortage and the assignment of an unqualified person to serve as window clerk, with the resulting posting error. Subsequently, he relieved her from the mail processing position and, on July 21, sent her to another post office for two weeks of developmental training in finance.

Hanlen resumed her former duties as customer services supervisor in Broomfield on August 5. On August 19, she learned that her male replacement had a shortage of $1,600 during his six-month tenure, but did not receive either a

letter of warning or developmental training.  Shortly afterwards, a new postmaster was appointed and Lavender left the Broomfield post office.  On September 24, Hanlen initiated EEO counseling on a third complaint, in which she repeated her earlier charges and also asserted that the letter of warning and the developmental detail assignment constituted discrimination on the basis of sex.

The EEO denied relief on Hanlen's first two administrative complaints and dismissed the third for failure to initiate EEO contact within the applicable time limit of forty-five days of the date of the allegedly discriminatory action.  Hanlen then filed this lawsuit, contending that she had been discriminated against on the basis of age and sex and that the later USPS actions were in retaliation for pursuing EEO complaints.  After the district court granted summary judgment motions filed by the USPS, Hanlen appealed.

## DISCUSSION

We review a grant of summary judgment de novo and apply the same standard as applied by the district court.     See  Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999)     .  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  As required, "we view the factual record and

inferences therefrom in the light most favorable to the nonmoving party."
Bullington , 186 F.3d at 1313.

The district court disposed of Hanlen's claims in two stages. In its first ruling, the court determined that Hanlen's third administrative complaint was untimely and entered judgment on her claims relating to the letter of warning and developmental detail. Later, it granted a defense motion for summary judgment on the merits of Hanlen's remaining claims. Hanlen challenges both determinations on appeal.

**Timeliness**

Before filing suit in federal court, there are a number of administrative steps a federal employee must first complete. See Jones v. Runyon , 91 F.3d 1398, 1399-1400 (10th Cir. 1996). Under the applicable regulations, an individual who claims to have been discriminated against must initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Courts have likened this period to a statute of limitations. See Johnson v. Runyon , 47 F.3d 911, 917 (7th Cir. 1995). If the matter is not resolved informally, the employee must then file a complaint with the employer's EEO agency. See 29 C.F.R. § 1614.106. After waiting 180 days for the EEO agency to issue a final decision or within ninety days of receipt of the

EEO's agency's final action, the employee may then seek relief in federal district court.  See id. § 1614.408.

With regard to her third complaint, Hanlen concedes that she first made EEO contact sixty-four days after the developmental detail and 109 days after the letter of warning.  She argues, however, that we should disregard the forty-five day limitation because she did not realize these actions were discriminatory until August 19, when she discovered that her male replacement was given more lenient treatment.    See id. § 1614.105(a)(2) (extending the period "when the individual shows . . . that he or she did not know and reasonably should not have [ ] known that the discriminatory matter or personnel action occurred . . . .").

In connection with the accrual of a discrimination claim, "'[w]e may presume that many facts will come to light after the date of [a disciplinary action], and indeed one purpose of a charge and a complaint is to initiate the process of uncovering them.'"    Hulsey v. Kmart, Inc.   , 43 F.3d 555, 558 (10th Cir. 1994) (quoting   Olson v. Mobil Oil Corp.   , 904 F.2d 198, 202-03 (4th Cir. 1990). A plaintiff is "'on notice at the moment'" of the personnel action "'to inquire whether there was [a] discriminatory motive.'"    Id. (further quotation omitted); see also  id. at 559 ("'To the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation,

that establishes the commencement of the pertinent filing period.'") (quoting

Hamilton v. 1st Source Bank, 928 F.2d 86, 88-89 (4th Cir. 1990).

Hanlen failed to meet the deadlines for initiating EEO counseling on the letter of warning and the developmental detail. As a consequence, her discrimination claims arising from these actions are not within the scope of this action. The district court properly entered judgment on these claims. [1]

**Merits of remaining claims**

Hanlen's remaining discrimination claims concern the proposed removal, suspension, and reassignment, along with the related changes in working conditions.

> A prima facie case of disparate discipline may be established if the plaintiff proves by a preponderance of the evidence that (1) the plaintiff is a [member of a protected class], (2) the plaintiff was disciplined by the employers, and (3) the employer imposed the discipline under circumstances giving rise to an inference of . . . discrimination.

---

[1]     Hanlen asserts that we should apply the "reasonable suspicion" standard set forth in Paredes v. Nagle, No. 81-1374, 1982 WL 319 (D.D.C. Jan. 17, 1982) and used by the Equal Employment Opportunity Commission to determine the timeliness of an EEO initial contact. Under that standard, the 45-day time period begins to run when the complainant has sufficient knowledge of facts and circumstances to support the reasonable suspicion that prohibited discrimination has occurred. Id. at *4. Here, the record shows that Hanlen suspected Lavender of discriminatory animus before she received the letter of warning or the developmental detail assignment. Even under the Paredes standard, there is no justification for an extension of time.

Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000). "One of the ways this third prong may be met, and the method chosen by [the plaintiff] here, is by attempting to show that the employer treated similarly situated employees differently." Id. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Aramburu v. Boeing Co., 112 F.3d 1398, 104 (10th Cir. 1997) (quotation omitted).

Hanlen argues that she established her prima facie case with a showing that she was disciplined for her certification of the inaccurate reports, but that the delivery supervisors who supplied the information were not disciplined. We conclude, as did the district court, that Hanlen and the delivery supervisors were not similarly situated. Although Lavender supervised all these individuals, only Hanlen was responsible for certification and, as a result, was subject to different standards. Hanlen did not show disparate treatment of other, similarly-situated employees and thus failed to establish a prima facie case of discriminatory discipline. [2]

---

[2]    In discriminatory discipline cases, "'[a]n inference of discrimination may be raised by evidence that a plaintiff was . . . treated less favorably than similarly situated employees who are not in the plaintiff's protected class.'" Hardy v. S.F. Phosphates Ltd., 185 F.3d 1076, 1082 (10th Cir. 1999) (quoting Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir. 1996)). In cases applying the burden-shifting scheme set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792,

(continued...)

-9-

Hanlen also alleged that the USPS retaliated against her for pursuing her

[2](...continued)
802-04 (1973), a showing that similarly-situated parties received different treatment can also satisfy the third element of a plaintiff's prima facie case. See Jones, 203 F.3d at 753.

However, this is not the only way a plaintiff may raise the requisite inference of discrimination. The McDonnell Douglas test is a flexible one. See Greene v. Safeway Stores, Inc., 98 F.3d 554, 560 (10th Cir. 1996). The prima facie case may be "adapted to the particular type of adverse employment decision in question." Id.; see also Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1247-48 (6th Cir. 1995) (tailoring a prima facie case to suit instance in which plaintiff was the only management-level employee involved in an after-hours incident, so that he could not show disparate discipline of similarly-situated employees). The basic requirement is that "there must be a logical connection between each element of the prima facie case and the inference of discrimination." Perry v. Woodward, 199 F.3d 1126, 1136 (10th Cir. 1999), petition for cert. filed (U .S. Mar. 16, 2000) (No. 99-1527).

Here, relying on the McDonnell Douglas scheme, Hanlen sought to demonstrate a prima facie case with a showing that similarly-situated employees were treated differently. She did not argue that she had no similarly-situated co-employees and that the McDonnell Douglas burden-shifting scheme should thereby be adapted to accommodate her facts. As a consequence, we need not address that question.

In any event, disparate discipline of similarly-situated employees is relevant to a later stage of the McDonnell Douglas analysis: the employee's showing that the employer's facially nondiscriminatory reason for the contested action is pretextual. See Elmore v. Capstan, Inc., 58 F.3d 525, 530 (10th Cir. 1995); see also Aramburu, 112 F.3d at 1403-05 (noting similarly-situated issue as part of prima facie case, but discussing it under pretext); Morgan v. Hilti, 108 F.3d 1319, 1324 (10th Cir. 1997) (addressing similarly-situated issue as relevant to a showing of pretext). If we addressed the issue as part of a pretext analysis, the result in the present case would be the same.

EEO claims. [3] With regard to the retaliation claims, the district court assumed that Hanlen had established the applicable prima facie case: "(1) that she was engaged in opposition to . . . discrimination; (2) that she was subjected to an adverse employment action; and (3) a causal connection existed between the adverse employment action and her protected activity." Heno v. Sprint/United Management Co., Nos. 98-1085, 98-1093, 98-1154, 2000 WL 342232, at *8-*9 (10th Cir. Apr. 3, 2000). It concluded, however, that the USPS had proffered a facially nondiscriminatory explanation for its actions and that Hanlen had failed to show a genuine dispute of material fact as to whether the proffered reason is pretextual. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

On appeal, Hanlen does not claim to have provided evidence of pretext. Rather, she argues that if the district court had not erroneously dismissed her time-barred claims, she would have shown pretext by comparing her treatment with that of her replacement. There are two logical flaws in this argument. First, as stated above, the district court did not err in dismissing the time-barred claims. Second, Hanlen does not explain how the dismissal of those claims limited her ability to introduce evidence relevant to her remaining claims. Because Hanlen

---

[3]    Hanlen's administrative complaints did not include allegations of retaliation. An employer's act committed in retaliation for filing an administrative discrimination complaint, however, "is reasonably related to that complaint, obviating the need for a second . . . complaint." Jones, 203 F.3d at 755 (quotations and citations omitted).

does not challenge the district court's determination that she failed to proffer evidence of pretext, we will not disturb its ruling.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge
