**Brenda L. TURLEY, Plaintiff,**

v.

**UNION CARBIDE CORPORATION, Defendant.**

**Civ. A. No. 84–2330.**

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 9, 1985.

Alfred B. McCuskey, II, St. Albans, W.Va., for plaintiff.

Roger A. Wolfe, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for defendant.

**MEMORANDUM OPINION AND ORDER**

HADEN, Chief Judge.

Pending before the Court is the Defendant's motion to dismiss or in the alternative for summary judgment. In support of its motion, the Defendant has a filed a lengthy and well-written brief. In response, the Plaintiff asserts that the motions are untimely.

The Plaintiff, in arguing that the Defendant's dispositive motions come too late, points to this Court's Pretrial Procedures and Final Scheduling Order of December

14, 1984. That Order set May 30, 1985, as the deadline for filing dispositive motions. The Defendant acknowledges that that deadline has come and gone, but contends that it has good cause for why the Court should now consider its motions. The Defendant argues that the grounds in support of its motions were not fully exposed until the Plaintiff "had completed her pretrial submissions required by this Court in the above-mentioned Order." Counsel may or may not be aware that this Court as a matter of procedure set the deadline for dispositive motions to be thirty days after the discovery cutoff date. In this case, discovery was scheduled to end on April 30, 1985; therefore, the deadline for dispositive motions was set as May 30, 1985. This thirty-day "grace period" allows counsel to assimilate and organize the information gathered during discovery for use in any dispositive motion which may be appropriate for the Court's consideration. Upon Plaintiff's motion, the discovery in this case was reopened until September 10, 1985. In the Order which extended discovery, the Court expressed some reservations about the good cause shown by the Plaintiff. Nevertheless, in the interest of justice, the motion was granted.

The record does not clearly reflect whether the Defendant was hindered by the delay of discovery completion or by other pretrial delays. In any event, at the pretrial conference in this action, September 3, 1985, the Defendant submitted its motions with supporting memoranda. The Court then set up a briefing schedule for Plaintiff to respond. At no time did the Plaintiff's counsel object to the procedure. The Court does not now consider the Plaintiff's objection to be well taken. The Court also regrets that it does not have the benefit of Plaintiff's argument in considering the motions before the Court.

### I. *Statute of Limitations*

The Defendant makes a compelling argument that the statute of limitations for this action should be one year from the date of discharge. Plaintiff was discharged from Defendant's employment on March 9, 1983. She filed a complaint with the West Virginia Human Rights Commission charging the Defendant with acts of discrimination because of her sex and handicap. The Commission issued a right-to-sue notice dated December 15, 1983. The Plaintiff thereafter filed suit in Kanawha County Circuit Court on August 1, 1984. The action was then removed to this Court by the Defendant. The applicable statute dictates that a recipient of a right-to-sue notice may bring suit within ninety days of the notice or until the end of the applicable statute of limitations, whichever is later. *W. Va. Code*, § 5–11–13(b). Accepting arguendo the one year limitation period advocated by the Defendant, the latest the Plaintiff could have filed this action was March 14, 1984. Thus, her action, filed several months after that date, would be untimely.

The Defendant partly bases its argument on *W. Va. Code*, § 55–2–12, which provides, in pertinent part, as follows:

"Every personal action for which no limitation is otherwise prescribed shall be brought: ... (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have brought at common law by or against his personal representative."

The Defendant also tenders the West Virginia authority *Snodgrass v. Sisson's Mobile Sales, Inc.*, 161 W.Va. 588, 244 S.E.2d 321 (1978), which holds that *W. Va. Code*, § 55–2–12 must be read *in pari materia* with *W. Va. Code*, § 55–7–8a(a), since both relate to the same subject matter and were adopted as part of a common plan. *Id.* 244 S.E.2d at 324. *W. Va. Code*, § 55–7–8a(a) provides, in pertinent part, as follows:

"(a) In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding

the death of the person entitled to recover or the death of the person liable."

The West Virginia Supreme Court has held that "[t]he effect of this subsection is to create statutory survivability for the causes of action contained therein to parallel the same causes of action set out in *W.Va.Code*, 55–2–12(a) and (b)." *Snodgrass* at 324–25. Hence, an action based in fraud and deceit is subject to a two-year limitations period.

In *Stanley v. Sewell Coal Co.*, 285 S.E.2d 679 (W.Va.1981), the West Virginia Supreme Court addressed the question of the applicable statute of limitations for a wrongful discharge suit brought under the authority of *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978). *Harless* had sanctioned a civil remedy for an employee who was discharged from an employment at-will position in contravention of a substantial public policy principle—in that case, reporting statutory violations. After giving a broad interpretation to the legal concept of "fraud and deceit," the *Stanley* Court concluded "that the underlying principles of a retaliatory discharge cause of action are sufficiently related to an action for fraud and deceit so that the two-year statute of limitations applies under *W.Va.Code*, 55–2–12, and *W.Va.Code*, 55–7–8(a)." *Stanley* at 683. The Defendant's task here, obviously, is to distinguish the holding in *Stanley*.

The Defendant argues that it would not be logical to extend the holding in *Stanley* to discrimination claims under the West Virginia Human Rights Act. It points out that whereas the *Harless* wrongful discharge action is entirely a creation of the Court, an action under the Human Rights Act is one of statutory origin. It thus concludes that "any attempt to equate the two causes of action proceeds from a false assumption." Without aid of further elaboration by the Defendant, the Court fails to see why one needs to proceed with this assumption which the Defendant labels as false. Certainly, the two actions have different origins. The Court, however, is not precluded from equating the two simply because of differing origins. Indeed, it is precisely because of this difference that the Court must—as part of a careful analysis—look for similarities.

The Defendant states that the decision in *Stanley* "may be read in one of two ways. Either it stems from the peculiar nature of the retaliatory discharge cause of action as created in *Harless*, or it stands for the proposition that any act which contravenes a substantial public policy constitutes fraud and deceit and is, therefore, survivable under *W.Va.Code*, 55–7–8(a)." The Court cannot agree with this characterization; it sets forth a false dilemma. The Defendant would have the Court believe that if *Stanley* cannot be limited to the narrow facts and holding of *Harless*, then it must be broadly interpreted to stand for "the proposition that any act which contravenes a substantial public policy constitutes fraud and deceit." This case does not involve "any act"; it involves, in part, an alleged discharge from employment for reasons which—according to the West Virginia Legislature—contravene public policy. Hence, the reasoning of *Stanley* appears to govern. The Defendant may be at liberty to portray the *Stanley* Court as one using "convoluted analysis" and propogating "an amazing piece of verbal sleight-of-hand." This Court, however, as a federal court sitting in diversity, is not willing or able to second guess the judgment of the highest court of West Virginia. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

To further support its argument that a one-year limitations period should pertain, the Defendant cites *W.Va.Code*, § 5–11–13 and its discrete time periods. Specifically, the Defendant points out that an individual must file his or her complaint with the Commission within ninety days of the incident upon which the complaint is based. The Commission than has 180 days to hold a public hearing; if it fails to do so, a right-to-sue notice must be given to the complainant. The complainant then has ninety days to bring suit. From this series

of time periods, the Defendant deduces a legislative intent to place a one-year limitations period on actions under the Human Rights Act. The Court, on the other hand, finds that if the statutory language embodies any legislative intent, it is an intent to leave the determination of the limitations period to authority outside of *W. Va. Code*, § 5–11–13. Otherwise, the Legislature would not have provided for the contingency whereby an applicable statute of limitations had not expired. It could have just allowed the time periods in the statute to act of their own force. In summation, the Court believes the statutory section cited by the Defendant only to evince a legislative intent to place the parties back into the traditional judicial system after a period of time, not to prescribe of its own weight a limitations period.

## II. *Plaintiff's Claim of Handicap Discrimination*

■ The Defendant contends that the Plaintiff has abandoned her handicap discrimination claim. The basic facts appear to be as follows:

1. Both the Plaintiff's amended complaint before the West Virginia Human Rights Commission and her complaint in this civil action asserted that she was discriminated against on the basis of a handicap.

2. This Court's Order of December 14, 1984, directed the parties to submit suggested findings of fact, suggested conclusions of law and a proposed pretrial order covering all pertinent claims and theories.

3. The Plaintiff submitted the three above documents without mentioning the handicap claim.

4. The Defendant extensively discussed the handicap claim in its submissions.

Accordingly, the Court finds that the Plaintiff has abandoned her handicap claim. She may not recover upon this claim at trial; however, the underlying facts of such claim may be admissible where relevant to other claims.

## III. *Sex Discrimination*

The Defendant contends that a claim based upon sexual harassment does not state a cause of action under West Virginia law. Before turning to this argument, the Court first finds that no genuine issue of material facts exists as to the Plaintiff's sexual harassment claim. Hence, judgment is appropriate as a matter of law. In this instance, the Court finds the Defendant to be entitled to summary judgment. Therefore, the Court need not and does not address the Defendant's argument as to the validity of this type of action.

Sexual harassment has been defined as "the unwanted imposition of sexual requirements in the context of a relationship of unequal power." C. MacKinnon, *Sexual Harassment of Working Women*, 1 (1979), *quoted in* note "Sexual Harassment Claims of Abusive Work Environment under Title VII," 97 Harv.L.Rev. 1449 (1985). The EEOC guidelines on sexual harassment, 29 C.F.R. § 1604.11 (1983), opened with the following comment:

"(a) Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature constitute sexual harrassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

■ This action is not brought under Title VII; therefore, the Guidelines are not expressly applicable. Nevertheless, the Court does not believe that the guidelines provide insight into the nature of a sexual harassment theory. The theory rests upon conduct which can be characterized as sexual. "Sex" in this instance does not mean gender. Rather, it is used pursuant to its

more popular meaning. Thus, while the harassment may be directed at a member of the female *sex*, it is a harassment which plays upon the stereotypical role of the female as a sexual object. *See Katz v. Dole,* 709 F.2d 251 (4th Cir.1983); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir. 1982).

■ In reviewing the record of this case, the Court is of the opinion that there are no facts which would support a finding of sexual harassment as that term has come to be used in employment discrimination law. The Plaintiff's complaint is based upon the actions of one person, her foreman. Her own testimony, however, reveals that the Plaintiff was not subjected to harassment of a sexual nature. The foreman did not demand sexual relations, he did not touch her or make sexual jokes. Instead, it appears that he harassed her in a nonsexual manner. The Plaintiff alleges that he was "picking on me all the time." The Plaintiff also alleges that the foreman treated her differently than the male employees. On these facts, the Plaintiff states a cause of action for sex discrimination. It does not, however, fall under the label of sexual harassment.

The distinction between a theory based on sexual harassment and one based on general sex discrimination is more than a matter of semantics. The distinction lies in the analysis to be applied. In *Katz,* the Fourth Circuit held that, unlike a disparate treatment analysis, an analysis of a sexual harassment claim does not center on a discriminatory motive. Rather, "the most difficult legal question typically will concern the responsibility of the employer for that harassment." *Katz* at 255. Without straying too far from what needs to be answered here, the Court believes that a disparate treatment analysis is appropriate under these facts. *See McDonell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonell* test may, of course, need to be modified to meet the special facts of this case. *Burdette v. FMC Corp.,* 566 F.Supp. 808 (S.D.W.Va.

1983) (*McDonell* test not to be ritualistically applied).

Accordingly, it is hereby ORDERED that:

1. The Defendant's motion for summary judgment on the statute of limitations issue is denied.

2. The Defendant's motion for summary judgment on the Plaintiff's handicap discrimination claim is granted.

3. The Defendant's motion for summary judgment on the Plaintiff's sexual harassment theory is granted.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.