Paula HOPKINS, Plaintiff,

v.

The SHOE SHOW OF VIRGINIA, INC., Defendant.

Civ. A. No. 2:87–0409.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 4, 1988.

---

Gene Hal Williams, South Charleston, W.Va., for plaintiff.

Roger A. Wolfe, Jackson & Kelly, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This action was brought by the Plaintiff, Paula Hopkins, against her former employer, The Shoe Show of Virginia, Inc. (Shoe Show). Originally filed in the Circuit Court of Kanawha County, West Virginia, and subsequently removed to this Court,[1] this action is based upon the alleged sexual harassment of the Plaintiff by her supervisor, Daniel L. Meadows, an employee of the Defendant.[2] The Plaintiff pursues her claims of sexual harassment under the West Virginia Human Rights Act (the WVHRA), *W.Va.Code,* §§ 5–11–1, *et seq.*[3] Several other claims are also alluded to in the complaint. The Defendant has moved for summary judgment. The issues presented having been thoroughly briefed, the Court now considers this motion.

### A. *Facts*

Hopkins was employed by Shoe Show as a part-time clerk in March, 1983, at one of its stores in Charleston, West Virginia. Later she became store manager. She remained in that position until she left her employment on June 4, 1986. Later that month, she filed a charge of sex discrimination against Shoe Show with the West Vir-

---

1. Previously, the Plaintiff unsuccessfully sought to have the case remanded to state court.

2. Meadows is not a party to this action.

3. There is no allegation in the complaint that the West Virginia Human Rights Commission has issued a right to sue notice. However, the Defendant does not question the appropriate-

ness of this action. The Plaintiff has also noted that she has initiated this action pursuant to *W.Va.Code,* § 5–11–13, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at unnumbered page 5. Subsection (b) of that statute provides for the issuance of a right to sue notice. It is assumed, therefore, that this case is properly before the Court.

ginia Human Rights Commission (the Commission). She alleged that racial[4] and sexual harassment by her supervisor, Meadows, forced her to terminate her employment with Shoe Show.

The Plaintiff has alleged in her complaint filed in this case that after she became store manager, Meadows began to sexually harass her, both verbally and physically. She further claims that because she did not welcome his advances, the sexual harassment stopped, and in April, 1986, Meadows instead began constant criticism of her work. The atmosphere thus created allegedly led to her resignation.

The parties have submitted affidavits and deposition testimony in support of their respective positions.[5] Therefore, the following facts are also of record. Although Hopkins quit her job on June 4, 1986, Shoe Show did not learn of her complaints of sexual harassment until July 25, 1986, when it received a copy of the charge filed with the Commission. Hopkins admits that she did not voice her complaints to Shoe Show management while she was employed there. She did speak frequently with individuals at the "home office." However, she testified that she did not engage in extensive conversations, but only answered the telephone when those people called the store to speak to Meadows. She has also stated that Meadows told her that all complaints or problems had to be brought to him and that she believed that she would be fired if she ever complained to his supervisors. She further felt that management would believe Meadows' word over hers.

Immediately after receiving notice of Hopkins' complaints before the Commission, the Defendant wrote a letter offering Hopkins reinstatement to her former position as store manager. The letter further offered to arrange for removal of Meadows so that Hopkins would no longer have to work with him. The Plaintiff admits that such an offer was communicated to her by an investigator with the Commission, but denies having seen a written offer. She further testified that she declined the offer and "would never work for them again."

### B. *Employer Liability*

The Defendant moves for summary judgment on the Plaintiff's claim of employment discrimination based on sexual harassment. Shoe Show argues that, even assuming improper actions by its employee Meadows,[6] as a matter of law, it should not be held liable for such conduct.

There are no West Virginia cases dealing with the issue of employer liability for sexual harassment by a supervisory employee. It is urged by both parties, therefore, that the Court should look to federal case law dealing with claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

The West Virginia Supreme Court of Appeals has previously adopted Title VII standards for application in cases brought under state law. *See, e.g., Shepherdstown Volunteer Fire Dept. v. State ex rel State Human Rights Commission,* — W.Va., —, 309 S.E.2d 342 (1983) (adopting standards of proof and formulation of a prima facie case of unlawful discriminatory practices as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); and *State ex rel.*

---

**4.** No claims of racial discrimination have been made in this action.

**5.** In her response to the instant motion, the Plaintiff urges the Court to disregard the Defendant's affidavits because they were submitted beyond the time permitted by the Time Frame Order.

Although the executed and notarized affidavits, in fact, were filed beyond the deadline for the filing of dispositive motions, unexecuted copies accompanied the motion for summary judgment, which was filed timely. The Court, therefore, finds that the Plaintiff has not been unduly prejudiced or surprised by the late filing

of these affidavits. Furthermore, the Court notes that the Plaintiff's response to the motion was filed beyond the time allowed by the Time Frame Order. In the interest of judicial economy, the Court, in passing on the motion for summary judgment, considers all materials submitted by the parties.

**6.** In its discussion herein, the Court does not intend to express an opinion as to whether Meadows actually engaged in sexual harassment. His affidavit, wherein he denies the Plaintiff's allegations, has been submitted to the Court.

*State Human Rights Commission v. Logan–Mingo Area Mental Health Agency, Inc.,* —— W.Va. ——, 329 S.E.2d 77 (1985) (adopting this Court's formulation of a prima facie case of disparate treatment as set forth in *Burdette v. FMC Corp.,* 566 F.Supp. 808 (S.D.W.Va.1983)). This Court has also found that Title VII standards are entitled to consideration in a case brought under the WVHRA. *Turley v. Union Carbide Corp.,* 618 F.Supp. 1438 (S.D.W.Va. 1985).

In particular, the parties urge consideration of *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) in ruling on the Defendant's motion for summary judgment. The Court believes that the West Virginia court would look for guidance to that case if confronted with the issue presented here.

In *Vinson,* a case dealing with the liability of an employer for sexual harassment by a supervisor, the court noted that "[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s] on the basis of sex.' " [7] *Vinson,* 106 S.Ct. at 2404. Interpreting Equal Employment Opportunity Commission (EEOC) guidelines, the Court recognized two types of discrimination based on sexual harassment. First, it noted that sexual harassment may be "directly linked to the grant or denial of an economic *quid pro quo.*" *Id.* at 2405. Second, such conduct may result in "so-called 'hostile environment' (*i.e.,* non *quid pro quo* harassment,) as it affects the 'terms, conditions, or privileges of employment.' " *Id. See also Katz v. Dole,* 709 F.2d 251 (4th Cir.1983) (recogniz-

ing claim of sexual harassment based on "a sexually hostile working environment").

While an employer is generally held strictly liable for *quid pro quo* harassment, *Id.* at 255 n. 6, determining employer liability in the hostile environment context involves consideration of the facts presented in a particular case. In *Vinson,* the Court was persuaded by the position of the EEOC that traditional agency principles should control determinations of employer liability. The EEOC's position there was that

> "where a supervisor exercises the authority actually delegated to him by his employer, by making or threatening to make decisions affecting the employment status of his subordinates, such actions are properly imputed to the employer whose delegation of authority empowered the supervisor to undertake them.... [W]hen a sexual harassment claim rests exclusively on a 'hostile environment' theory, however, the usual basis for a finding of agency will often disappear."

*Vinson,* 106 S.Ct. at 2407–08.

In this case the Defendant argues that the Plaintiff has stated a claim for sexual harassment based upon a hostile environment theory only. The Plaintiff, naturally, has indicated her intention to proceed on a *quid pro quo* theory as well. However, there are no claims that the alleged harassment was directly tied to the grant or denial of job benefits.[8] Accordingly, the Court concludes that the allegations in the complaint and the evidence of record support only a claim for hostile environment harassment.

---

7. This action is prosecuted under the West Virginia Human Rights Act, which provides that it is unlawful

   "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or handicapped."

   *W.Va.Code,* § 5–11–9(a). It is not questioned that a claim of sexual harassment states a cause of action under the WVHRA. The Commission recognized that a charge of sex discrimination could be based upon claims of sexual harass-

ment, as evidenced by its finding of probable cause dated October 16, 1986. While not directly confronted with this question, the Court concludes that allegations of sexual harassment will support an action brought pursuant to the WVHRA.

8. The Plaintiff has alleged that Meadows told her that she would have to "flirt" with him in order to keep her job. However, there are no allegations that she was in fact fired for her refusal, that any adverse employment decisions were made as a result of her refusal, or that she submitted in order to avoid being fired.

The Defendant argues that in a hostile environment case, the employee must show that the employer knew or should have known of the conduct complained of, either from actual complaints or the pervasive nature of the activity. *See Katz v. Dole, supra,* 709 F.2d at 255, and *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir. 1982). In this case it is undisputed that the Plaintiff did not inform the Defendant of Meadows' conduct. Further, the Plaintiff has testified that all such activity occurred in a storeroom where it was not generally visible to others. The Defendant, therefore, seeks a finding that it neither knew nor should have known of the alleged sexual harassment and a ruling that it may not be held liabile for such conduct.

Such a ruling would not take into consideration the full range of implications of the holding in *Vinson,* however. Holding "that employers are [not] always automatically liable for sexual harassment by their supervisors," the Court in *Vinson* also concluded that "absence of notice to an employer does not necessarily insulate that employer from liability." *Vinson,* 106 S.Ct. at 2408. The EEOC, as *amicus curiae,* had suggested that whether an employee has a " 'reasonably available avenue of complaint regarding such harassment' " is relevant to the question of employer liability. *Id.* The Court agreed, finding relevant, but "not necessarily dispositive," Vinson's failure to use the bank's grievance procedure to lodge her complaints of sexual harassment. *Id.* at 2409. This was because the procedure required an employee to complain first to her supervisor (the alleged perpetrator) and because the bank's policy of nondiscrimination did not specifically address sexual harassment.

Based on this aspect of the holding in *Vinson* and the Court's belief that the West Virginia state courts would apply that holding in a case such as this, the Court finds, under the circumstances presented here, that there exists an issue of fact material to the question of the Defendant's liability for the alleged sexual

harassment of the Plaintiff by her supervisor. The reasonableness of the Plaintiff's failure to make the Defendant aware of her situation is relevant to this issue and presents a question for the jury.

### C. Constructive Discharge

■ The Defendant also seeks partial summary judgment on the Plaintiff's claim that she was constructively discharged.

In order to

"establish a constructive discharge the employee must have been subjected to intolerable working conditions, thus forcing the employee to quit. Also, 'the employer's actions must be intended by the employer as an effort to force the employee to quit.' "

*McKinney v. K-Mart Corp.,* 649 F.Supp. 1217, 1219 (S.D.W.Va.1986) (citations omitted).

"Intolerability of working conditions ... is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign."

*Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985).

The Defendant argues that evidence that it did not receive notice of the alleged harassment until well after the Plaintiff's resignation indicates that it could not have had the intent to force that resignation.[9] Although the Court finds that the issue of intolerability raises a question of fact, the Court also finds that in response to the Defendant's motion for summary judgment on the issue of intent, the Plaintiff has not designated specific facts in the record which indicate the existence of a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Instead, she merely asserts that Meadows acted deliberately to force her to quit her job. Because such a conclusory allegation does not withstand a motion for summary judgment, and because the Plaintiff has thus failed to establish an element of her claim, the Court

---

**9.** The Court does not address the question of under what circumstances such intent by a su-

pervisor should be imputed to the employer.

grants the Defendant's motion for partial summary judgment on the issue of constructive discharge.

## D. *Back Pay*

■ The Defendant also moves for partial summary judgment as to the Plaintiff's ability to establish a claim for back pay after July 31, 1986. Shoe Show argues that Hopkins failed to mitigate her damages by refusing its offer of reinstatement.

In *Ford Motor Company v. EEOC,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the court held that, in a Title VII case, an employer's unconditional offer of the position previously denied cuts off the accrual of back pay. Rejection of such an offer, "absent special circumstances, ... ends the accrual of potential backpay liability." *Id.* at 241, 102 S.Ct. at 3070. This holding was followed in an Age Discrimination in Employment Act case involving an offer of reinstatement. *Giandonato v. Sybron Corp.,* 804 F.2d 120 (10th Cir.1986).

The Defendant has produced an affidavit stating that, by letter written on July 25, 1986, it offered the Plaintiff reinstatement to the same position she had left and further offered to alleviate the situation by removing Meadows as her supervisor. No such letter has been submitted to the Court. The Plaintiff, in her deposition, testified that she did not see such an offer in writing. The Court is somewhat troubled by the state of the evidence on this point. However, it is clear from her deposition that an offer including the terms claimed to have been offered by Shoe Show was communicated to Hopkins in late July, 1986, by a Commission investigator. The Plaintiff has testified that she rejected this offer and has emphatically stated that she would not work for Shoe Show again.

In her response to the motion for summary judgment on this issue, the Plaintiff has raised the question of the admissibility of such an offer under the provisions of the WVHRA and regulations promulgated thereunder. Section 5–11–10 of the West Virginia Code provides that

> "members of the commission and its staff shall not disclose what has transpired in the course of [its endeavors to eliminate the unlawful discriminatory practices complained of by conference, conciliation and persuasion]."

The Court concludes that this is a grant of confidentiality to the parties in that the Commission may not disclose certain details of its proceedings. However, an offer made by one party during those proceedings certainly may be disclosed by that party.

In this case, the Court finds that Shoe Show's offer is relevant to the issue of back pay. The Plaintiff has not raised any facts to contradict the Defendant's position that an unconditional offer was made by Shoe Show and was rejected by her. Furthermore, she has not pointed to any special circumstances giving her reason to reject the offer. Accordingly, the Court grants the Defendant's motion for partial summary judgment on the issue of back pay and concludes that, in the event that Hopkins prevails on the issue of liability, she may be awarded back pay only through July 31, 1986.

## E. *Other Claims*

Finally, Shoe Show seeks summary judgment on any other claims Hopkins pursues. From the complaint it appears that she intended to proceed on a number of theories.[10] In her response to the motion for summary judgment, the Plaintiff has stated her intention to abandon certain aspects of her breach of contract claim, her claim based on the tort of outrage, and her claim based on the breach of the covenant of good faith. In the pretrial order, however, she has set forth claims only for sexual harassment and discrimination and retaliatory discharge.[11]

---

**10.** In her complaint the Plaintiff has alluded to claims for breach of contract, invasion of privacy, negligent failure to provide a safe work place, fraud on the public, assault and battery, the tort of outrage, and breach of the covenant of good faith, in addition to her discrimination claims.

**11.** Retaliatory discharge is not alleged in the complaint. From the description contained in the pretrial order, the Court assumes that the

The Defendant seeks summary judgment based on the Plaintiff's apparent abandonment of all claims other than those set forth in the pretrial order. The Defendant also relies on this Court's prior ruling that a violation of the WVHRA will not support an action brought pursuant to *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). *Guevara v. K–Mart Corp.,* 629 F.Supp. 1189 (S.D.W.Va.1986). The Defendant argues, therefore, that no tort-based action may be maintained based on conduct which violates the WVHRA. The Plaintiff has responded by urging the Court to consider her claims as "pendent" to the WVHRA claim. Pendent state law claims have been maintained along with Title VII claims. *See, e.g., Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524 (11th Cir.1983).[12]

The Court concludes, based upon her submission in the pretrial and her failure to present to the Court specific facts to support her assorted claims, that the Plaintiff does not seriously pursue them. Accordingly, the Court grants the Defendant's motion for summary judgment as to any claim not prosecuted pursuant to the WVHRA.

### F. *Summary*

Summarizing, the Court ORDERS as follows:

1. The Defendant's motion for summary judgment on the issue of employer liability is DENIED.

2. The Defendant's motion for partial summary judgment on the issue of constructive discharge is GRANTED.

3. The Defendant's motion for partial summary judgment on the issue of back pay is GRANTED.

Plaintiff intends to proceed on a constructive discharge theory.

12. The Plaintiff also argues that she may maintain an action for wrongful discharge based upon a violation of the WVHRA pursuant to *W.Va.Code,* § 55–7–9. That statute provides:

"Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for

4. The Defendant's motion for summary judgment as to all other claims arising out of the alleged sexual harassment is GRANTED.

such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

Just as a violation of the WVHRA cannot be considered to be a breach of public policy that will sustain a *Harless*-type action, such a violation will not support an action brought under § 55–7–9, because the WVHRA expressly provides for relief to victims of discrimination.