IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0848

_____

FILED

April 6, 2017

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HENRY METZ,
Plaintiff below, Respondent

v.

EASTERN ASSOCIATED COAL, LLC,
Defendant below, Petitioner

_____

Certified Questions from the Circuit Court of Monongalia County

CERTIFIED QUESTIONS ANSWERED

_____

Submitted: March 7, 2017
Filed:  April 6, 2017

C. David Morrison, Esq.                    Ronald G. Kramer, Esq.
Michael J. Moore, Esq.                     McNeer, Highland, McMunn and Varner, L.C.
Steptoe & Johnson PLLC                     Clarksburg, West Virginia
Bridgeport, West Virginia                  Counsel for Respondent
Counsel for Petitioner

Brian J. Moore, Esq,
Katherine B. Capito, Esq.
Dinsmore & Shohl, LLP
Charleston, West Virginia

and

John M. Canfield, Esq.
Vice President and Counsel
Amicus Curiae - West Virginia
Chamber of Commerce

Lonnie C. Simmons, Esq.
DiTrapano, Barrett, DiPiero,
McGinley & Simmons, PLLC
Charleston, West Virginia
Amicus Curiae - West Virginia Employment
Lawyers Association and West Virginia
Association for Justice

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICES DAVIS and WORKMAN concur in part, and dissent in part, and reserve the right to file separate opinions.

SYLLABUS BY THE COURT

1. "In circuit court cases alleging a discriminatory discharge from employment, which a complainant might bring in the West Virginia Human Rights Commission under the West Virginia Human Rights Act, *W.Va. Code*, 5-11-1 *et seq.*, the statute of limitations period for filing a complaint with the circuit court ordinarily begins to run on the date when the employer unequivocally notifies the employee of the termination decision." Syl. Pt. 1, *McCourt v. Oneida Coal Co.,* 188 W.Va. 647, 425 S.E.2d 602 (1992).

2. The statute of limitations for employment discrimination cases brought to enforce rights under the West Virginia Human Rights Act, W.Va. Code §§ 5-11-1 to -20 (2013), including allegations of discriminatory failure to hire, begins to run from the date a plaintiff first learns of the adverse employment decision.

3. The statute of limitations for employment discrimination cases brought to enforce rights under the West Virginia Human Rights Act, W.Va. Code §§ 5-11-1 to -20 (2013), including allegations of discriminatory failure to hire, is not tolled by the discovery rule until the plaintiff learns of the alleged discriminatory motive underlying the employment decision.

LOUGHRY, Chief Justice:

This case is before us on two certified questions from the Circuit Court of Monongalia County and presents related issues concerning when the statute of limitations begins to run with regard to an adverse employment decision in a failure to hire scenario. The circuit court asks us to determine whether the limitations period starts at the point when an individual first learns that he or she was an unsuccessful job applicant and, secondarily, whether the discovery rule tolls the statute of limitations until the individual learns of the alleged discriminatory motive underlying the adverse employment decision. Upon our full consideration of these issues in conjunction with both statutory and case law, we answer the first certified question in the affirmative and the second question in the negative.[1]

## I. Factual and Procedural Background

Henry Metz, the plaintiff below and respondent herein, was an active member of the United Mine Workers of America. As a union member, he was required to designate jobs for which he sought consideration when an opening arose. In July 2012, he bid on the position "mechanic trainee" at Federal No. 2 mine owned by Eastern Associated Coal ("EAC"), the defendant below and petitioner herein. While Mr. Metz learned of EAC's

---

[1]The circuit court answered both of the certified questions in the affirmative.

1

decision not to hire him on July 23, 2012, he did not learn until January 15, 2014, that the basis for the employment decision may have been his age.[2]

On March 19, 2014, Mr. Metz filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that EAC had violated the Age Discrimination in Employment Act ("ADEA").[3] After the requisite sixty-day period had passed for instituting an action to enforce the provisions of the ADEA,[4] Mr. Metz instituted a civil action in the Circuit Court of Monongalia County,[5] wherein he asserted that EAC had committed age discrimination in violation of the ADEA and the West Virginia Human Rights Act ("HRA").[6] On December 21, 2015, EAC successfully removed the action to federal court based on federal question jurisdiction. To defeat federal jurisdiction, Mr. Metz

---

[2]During a union grievance proceeding held in January 2014, Dan Ballard, EAC's manager of human resources, stated that Mr. Metz was not hired because they were seeking younger workers.

[3]EAC filed its position statement with the EEOC on May 28, 2014.

[4]*See* 29 U.S.C. § 626(d)(1) (2012) (providing that civil action to enforce ADEA may not be instituted until sixty days after lodging complaint with EEOC); *see also* 29 U.S.C. § 626 (c)(1) (permitting aggrieved individual to "bring a civil action in any court of competent jurisdiction" to seek relief under ADEA).

[5]The complaint was filed on November 23, 2015.

[6]*See* W.Va. Code §§ 5-11-1 to -20 (2013).

amended his complaint to remove the ADEA claim. Thereafter, the federal court remanded this employment discrimination case to state court.[7]

On March 7, 2016, EAC filed an Amended Motion to Dismiss seeking dismissal of the respondent's civil action under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure for failure to institute the suit within two years of the alleged discriminatory act underlying Mr. Metz' amended complaint. During the hearing on EAC's motion to dismiss, EAC orally moved to certify the issue of whether the limitations period is tolled under the HRA until a plaintiff learns of the prospective employer's alleged discriminatory animus. As a result, the circuit court certified the following two questions to this Court by order dated May 23, 2016:

> Question 1: For discriminatory hiring causes of action filed pursuant to the West Virginia Human Rights Act, codified at West Virginia Code § 5-11-1, *et seq.*, does the statute of limitations begin to run from the date that the plaintiff learns of the adverse employment decision?
>
> Question 2: For discriminatory hiring causes of action filed pursuant to the West Virginia Human Rights Act, codified at West Virginia Code § 5-11-1, *et seq.*, does the discovery rule toll the statute of limitations until the plaintiff discovers the alleged discriminatory motive underlying the employment decision?

The circuit court answered each of the questions in the affirmative.

---

[7]The remand was directed by order entered on February 25, 2016.

3

## II. Standard of Review

Our review of issues certified to this Court from circuit courts is plenary. *See* Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996) ("The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."). We proceed to consider the questions presented by the circuit court.

## III. Discussion

Addressing the questions in turn, we initially consider whether the statute of limitations applicable to a HRA cause of action begins to run from the date a plaintiff learns of an adverse employment decision.[8] Both sides agree that the applicable limitations period is the "catch-all" two-year period set forth in West Virginia Code § 55-2-12 (2016).[9] *See Sharp v. S. W.Va. Reg'l Health Council*, 178 W.Va. 196, 199 n.4, 358 S.E.2d 455, 458 n.4 (1987) (recognizing that because HRA does not specify statute of limitations for civil actions brought in circuit court, limitations periods set forth in W.Va. Code §§ 55-2-12 and 55-7-8a control); *accord McCourt v. Oneida Coal Co.,* 188 W.Va. 647, 651, 425 S.E.2d 602, 606 (1992); *see also Turley v. Union Carbide Corp.*, 618 F.Supp. 1438, 1441 (S.D. W.Va. 1985)

---

[8]A joint amicus curiae brief was submitted by the West Virginia Employment Lawyers Association and the West Virginia Association for Justice; a separate amicus brief was submitted by the West Virginia Chamber of Commerce.

[9]Under this provision, "[e]very personal action for which no limitation is otherwise prescribed shall be brought:  (a) Within two years next after the right to bring the same shall have accrued . . . ."  W.Va. Code § 55-2-12.

4

(applying two-year statute of limitations found in W.Va. Code § 55-2-12 to HRA action based on conclusion that Legislature "inten[ded] to place the parties back into the traditional judicial system" for limitation purposes).[10]

Almost thirty years ago and consistent with analogous federal law, we held in syllabus point two of *Independent Fire Co. No. 1 v. West Virginia Human Rights Commission*, 180 W.Va. 406, 376 S.E.2d 612 (1988): "In cases alleging a discriminatory discharge from employment under W.Va. Code, 5-11-10, the time period for filing a complaint with the Human Rights Commission ordinarily begins to run on the date when the employer unequivocally notifies the employee of the termination decision." Finding no reason to treat HRA cases prosecuted in circuit court differently,[11] we extended this ruling in syllabus point one of *McCourt*:

> In circuit court cases alleging a discriminatory discharge from employment, which a complainant might bring in the West Virginia Human Rights Commission under the West Virginia Human Rights Act, *W.Va. Code*, 5-11-1 *et seq*., the statute of limitations period for filing a complaint with the circuit court ordinarily begins to run on the date when the employer unequivocally notifies the employee of the termination decision.

188 W.Va. at 648, 425 S.E.2d at 603.

---

[10]The federal court looked to the language of West Virginia Code § 5-11-13(b) that references the filing of a HRA claim following the issuance of a "right to sue" letter "at any time during which such statute of limitations has not expired." 618 F.Supp. at 1441.

[11]This Court determined in *Price v. Boone County Ambulance Authority*, 175 W.Va. 676, 337 S.E.2d 913 (1985), that actions for violations of the HRA could be brought in the circuit court in the first instance.

Through the first certified question, the circuit court essentially asks this Court to apply the holdings of *Independent Fire* and *McCourt* concerning the running of the statute of limitations to cases in which the alleged act of employment discrimination is the decision not to hire an individual rather than the employer's decision to discharge or otherwise discriminate against an existing employee.[12] It has long been the law that limitation periods affecting employment discrimination actions ordinarily commence when an actual or prospective employer's decision is made and communicated in some fashion to the affected individual. *See Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 750 (1st Cir. 1994) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261-62 (1980)); *Hamilton v. 1st Source Bank*, 928 F.2d 86, 89 (4th Cir. 1990).[13] In the instance of failure-to-hire cases, the date on which the employer's hiring decision is made known is the reference point from which the limitations period is calculated. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (identifying refusal to hire as discrete act and finding same actionable on date of failure to hire). The employer's decision not to hire an individual is the alleged unlawful act for which the affected individual is seeking redress. Accordingly, it follows, and we so hold, that the statute of limitations for employment discrimination cases brought to enforce

---

[12]As EAC correctly observes, the HRA does not distinguish between failure-to-hire cases and cases involving the discharge of a former employee.

[13]*See Hanlon v. Chambers*, 195 W.Va. 99, 112, 464 S.E.2d 741, 754 (1995) (noting that, barring statutory distinctions or other compelling reasons, we analyze cases brought under HRA consistent with federal anti-discrimination laws).

6

rights under the HRA, including allegations of discriminatory failure to hire, begins to run from the date a plaintiff first learns of the adverse employment decision.

Proceeding to the actual crux of the case, we consider whether the discovery rule should operate to toll the statute of limitations in cases brought to enforce the HRA until such time as the employer's alleged discriminatory motive is evident. Both the circuit court and the respondent favor application of the discovery rule to HRA cases. Conversely, EAC urges this Court to conclude, in consonance with the majority of courts throughout the country, that the discovery rule is inapplicable to employment discrimination cases, barring those rare instances where equitable estoppel or equitable tolling is warranted based on the facts or an employer's concealment efforts. *See, e.g., Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (stating that equitable tolling applies "when 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant,' and . . . when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time'") (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) ("Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline."); *Seacrist v. Metro. Sec. Servs., Inc.,* No. 2:14-24372, 2015 WL 1527763 at *4-5 (S.D. W.Va. April 3, 2015) (discussing doctrines of equitable estoppel and equitable tolling and finding both doctrines

7

inapplicable where plaintiff failed to allege employer "committed some type of misconduct or induced him into believing he was not an employee, thereby preventing him from pursuing his legal remedies").

In support of his position that the discovery rule should apply, Mr. Metz looks to this Court's recent decision in *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009). Specifically, he relies upon syllabus point five of *Dunn*, which outlines a multi-step analysis for determining whether a cause is time-barred.[14] In *Dunn*, this Court sought "[t]o bring analytical clarity to the resolution of statute of limitation questions" by encapsulating in one

---

[14]The following test was adopted by this Court in *Dunn:*

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court . . . should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp. Inc.*, . . . . Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the potential cause of action. . . . And fifth, the court . . . should determine if the statute of limitation period was arrested by some other tolling doctrine. . . .

225 W.Va. at 46, 689 S.E.2d at 258, syl. pt. 5, in part.

8

synthesized point of law the myriad considerations that govern whether a limitations period prohibits an action from proceeding. *Id.* at 52, 689 S.E.2d at 264; *see supra* note 14. Of significance, and apparently overlooked by Mr. Metz, is the fact that *Dunn* did not expand the discovery rule beyond those causes of action in which the rule had previously been applied. Attempting to clarify the conflicting permutations of the discovery rule in *Dunn*, we held that "[t]he 'discovery rule' is generally applicable to all *torts*, unless there is a clear statutory prohibition to its application." 225 W.Va. at 46, 689 S.E.2d at 258, syl. pt. 2 (emphasis supplied).

In seeking to apply the discovery rule to an employment discrimination action, Mr. Metz glosses over the nature of an action brought under the HRA.[15] Unlike torts whose origins are the common law, the action at issue in this case has its genesis in statutory law. This distinction is significant. Because a HRA cause of action is a legislative creation, the statute governs the parameters of such claims. To illustrate, when the HRA was first enacted in 1967, a cause of action was required to be instituted with the West Virginia Human Rights Commission ("HRC") within 90 days to seek redress under the HRA. W.Va. Code § 5-11-10 (1967). By statutory amendment, that time period was later extended to 180 days. *See* 1987 W.Va. Acts of the Legislature page 246. Currently, the time period prescribed by

---

[15]When questioned during oral argument as to the non-tort nature of the case, Mr. Metz' counsel characterized the action as an "employment tort."

9

law to file an action with the HRC under the HRA is 365 days. *See* W.Va. Code § 5-11-10 (2013). As noted above, this Court has permitted HRA actions to skip the first level with the Commission and proceed directly to circuit court since 1985.[16] And because there is no statutorily-specified limitations period for those actions that commence in circuit court rather than before the HRC, this Court has applied the "catch all" two-year statute of limitations found in West Virginia Code § 55-2-12.

As support for its position against application of the discovery rule, EAC observes that the Legislature has specified the chronological springboard from which the limitations period is launched in HRA actions. By statute, "[a]ny complaint filed pursuant to this article [W.Va. Code § 5-11-1 *et seq.*] *must be filed* within three hundred sixty-five days *after the alleged act of discrimination.*" *Id.* (emphasis supplied). And while the limitations period itself is not controlling for purposes of HRA actions instituted in circuit court, EAC reasons that the statutory language specifying the parameters of instituting suit with the HRC is instructive in terms of what triggers the HRA-claim clock. Critically, only one event is necessary to commence the limitations period under West Virginia Code § 5-11-10 –"the alleged act of discrimination." *Id.* Noticeably absent from the statute is any reference to a complainant's knowledge or awareness of the offending employer's discriminatory animus. Instead, it is a singular act upon which the right to seek recovery

---

[16]*See supra* note 11.

10

under the HRA flows–the injury-causing discriminatory event. *See McCourt*, 188 W.Va. at 651, 425 S.E.2d at 606 ("As a general rule, this Court has rather consistently recognized that the statute of limitations begins to run from the date of injury."). In this case, that event is EAC's decision not to hire Mr. Metz.

EAC's suggestion that the statutory triggering language should similarly control a HRA case brought in circuit court has support in this Court's jurisprudence. When considering whether an alternate trigger should apply to circuit court-initiated HRA actions, we concluded in *McCourt* "that it would be inconsistent, illogical, and improper to adopt a different rule for actions brought in a circuit court which are based on fact situations identical to those which can serve as the basis of a Human Rights Action." 188 W.Va. at 652, 425 S.E.2d at 607. Adopting the rationale of *Independent Fire*, a HRA case filed with the HRC, we held that the limitations clock for HRA actions filed in circuit court similarly begins ticking when an employer unequivocally notifies the employee of the employment decision. *See id.* at 648, 425 S.E.2d at 602, syl. pt. 1. Extending the logic employed in *McCourt* to the question before us, EAC maintains that to apply a different standard for purposes of discerning what event triggers the statute of limitations for HRA cases filed in circuit court as contrasted to those filed with the HRC is nonsensical. We agree. In the same fashion that the Legislature designated the "alleged act of discrimination" as the limitations fulcrum for HRA claims filed with the HRC, the "alleged act of discrimination"

11

likewise operates to start the limitations clock when a HRA claim is filed in circuit court. W.Va. Code § 5-11-10; *see also Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 619 (2005) (observing that "EEOC charging period is triggered when a discrete unlawful practice takes place"); *Hamilton*, 928 F.2d at 88 (rejecting application of discovery rule to EEOC cases, reasoning that statutory trigger–*occurrence* of alleged violation–is discrete event "whereas a plaintiff's acquisition of knowledge is a continuing process").

Seeking to persuade this Court to toll the limitations period in HRA cases until a prospective employee has knowledge of the offending employer's discriminatory animus, Mr. Metz contends that unsuccessful job applicants do not sustain an employment-related injury until they learn of the employer's unlawful bias. Recognizing that the law does not guarantee protected persons a job–just protection against the denial of employment based on their protected status–Mr. Metz argues that actual knowledge of the discriminatory animus is a necessary part of the employment discrimination claim. We reject both of these arguments.[17]

The law is clear that proof of an employer's discriminatory animus is not an element of a HRA claim. To prove a *prima facie* claim of employment discrimination under

---

[17]We do not address Mr. Metz' argument, first raised on appeal and unaddressed by the circuit court below, that the statute of limitations was tolled by EAC's bankruptcy filing. *See* Syl. Pt. 1, *Mowery v. Hitt,* 155 W.Va. 103, 181 S.E.2d 334 (1971).

the HRA, a plaintiff is required to show: "(1) That the plaintiff is a member of a protected

class[;] (2) That the employer made an adverse decision concerning the plaintiff[;] [and that]

(3) But for the plaintiff's protected status, the adverse decision would not have been made."

Syl. Pt. 3, in part, *Conaway v. Eastern Ass'd Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423

(1986). Seldom will there be direct evidence of an employer's discriminatory intent. *See*

*id.* at 170, 358 S.E.2d at 429 ("Because discrimination is essentially an element of the mind,

there will probably be very little direct proof available."). The absence of direct evidence

of discriminatory animus, however, does not create an insurmountable hurdle to bringing

an employment discrimination case because "[d]irect proof . . . is not required." *Id.* As this

Court explained in *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 479 S.E.2d 561 (1996), "a

plaintiff can create a triable issue of discrimination animus through direct or circumstantial

evidence." *Id.* at 59, 479 S.E.2d at 569, syl. pt. 7, in part. Explaining the type of evidence

that will suffice to establish that the plaintiff's protected status was the basis of the adverse

employment decision, this Court explained in *Conaway:*

> What is required of the plaintiff is to show some evidence
> which would sufficiently link the employer's decision and the
> plaintiff's status as a member of a protected class so as to give
> rise to an inference that the employment decision was based on
> an illegal discriminatory criterion. This evidence could, for
> example, come in the form of an admission by the employer, a
> case of unequal or disparate treatment between members of the
> protected class and others by the elimination of the apparent
> legitimate reasons for the decision, or statistics in a large
> operation which show that members of the protected class
> received substantially worse treatment than others.

13

178 W.Va. at 170-171, 358 S.E.2d at 429-30 (footnotes omitted).

Mr. Metz mistakenly interprets this Court's articulation of the discovery rule in *Dunn* as requiring a factual inquiry into when he acquired knowledge of facts sufficient to form a good-faith belief that (1) EAC hired a younger applicant in lieu of him; and (2) that he would have been hired "but for" his age. Just as this Court did not alter the substantive application of the discovery rule through *Dunn*, we similarly did not alter the elements of a HRA action through that decision.[18] *See Conaway*, 178 W.Va. at 166, 358 S.E.2d at 425, syl. pt. 3. As discussed above, there is no statutory requirement that a complainant be aware of the employer's discriminatory animus before initiating a suit under the HRA. *See* W.Va. Code § 5-11-9. As is further made clear from the statutory framework, the limitations clock begins to advance from the time of the alleged discriminatory act. That act–the failure of EAC to hire Mr. Metz–occurred on July 23, 2012.

In seeking to apply the discovery rule to employment discrimination cases, Mr. Metz is swimming against the overwhelming current of judicial decisions on this issue. The Fourth Circuit has clearly rejected the application of the discovery rule to an EEOC

---

[18]In characterizing decisions such as *McCourt* and *Independent Fire* as "pre-*Dunn*," Mr. Metz wholly fails to apprehend *Dunn*. *Dunn* was not an employment discrimination case; accordingly, it had no effect on HRA cases which are not torts and thus not subject to the discovery rule by construct.

14

claim. *See Hamilton*, 928 F.2d at 87-88. The plaintiff in *Hamilton* learned thirteen months after his discharge that he had been receiving a lower salary than younger vice presidents sharing his same job category. *Id.* In response to his attempt to preserve his claim by relying on the discovery rule, the Fourth Circuit held: "To the extent that notice enters the analysis, it is notice of the employer's actions, *not* the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period." *Id.* at 88-89. In *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281 (3rd Cir. 2003), a fifty-seven-year-old employee sought to convince the appellate court that his claim did not accrue until he learned that his replacement was a younger individual. *Id.* at 286. Rejecting this contention, the Third Circuit ruled: "Wastak's [the plaintiff] injury was complete and discovered when LeHigh Valley terminated him. At that point, Wastak both knew of his injury–the discharge –and the cause of his injury–Lehigh Valley's decision to terminate his employment." *Id.* at 287. Just as in this case, Wastak argued that he had no reason to believe he was the victim of age discrimination at the time of his termination. *Id.* That argument was unavailing, because as the Third Circuit explained, "a claim accrues . . . upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Id.* (internal citation omitted); *accord Davidson v. America Online, Inc.,* 337 F.3d 1179, 1186 (10th Cir. 2003) (recognizing that employment discrimination claim accrues on date employee is notified of adverse employment decision); *Amini v. Oberlin College*, 259 F.3d 493, 498-99 (6th Cir. 2001) (holding that statute of limitations began running when employer notified plaintiff of

employment action); *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (deciding that statute of limitations began to run when plaintiff learned he was demoted and transferred, not when he learned that employment decisions may have been motivated by age discrimination); *Ogletree v. Glen Rose Indep. Sch. Dist.*, 314 S.W.3d 450, 454-55 (Tex. App. 2010) (deciding that employment discrimination claim was triggered on date of discharge, not on date of discovery of alleged discriminatory intent); *Huff v. Great W. Seed Co.*, 909 P.2d 858, 859 (Or. 1996) (holding that "plaintiff's belated discovery of an employer's unlawful motive does not delay the commencement of the statutory limitations period").

Recently, in *Slusser v. Vantage Builders, Inc.*, 306 P.3d 524 (N.M. Ct. App. 2013), the appellate court recognized as the majority rule among the federal circuits and state courts that in age-based discrimination cases the statute of limitations runs from the date the plaintiff learns of the adverse employment action rather than from when he discovers the discriminatory animus underlying that action.[19] *Id.* at 529. In explanation, the court offered:

---

[19]Mr. Metz relies on the two cases identified in *Slusser* as representing the minority position. *See Henry v. New Jersey Dep't of Human Servs.*, 9 A.3d 882 (N.J. 2010) (remanding employment discrimination case for hearing to determine whether employee had basis for discovering facts to form basis of actionable claim); *Wheatley v. American Tel. & Tel. Co.*, 636 N.E.2d 265 (Mass. 1994) (reversing grant of summary judgment to employer on grounds that factual question existed regarding employee's knowledge of his replacement by younger worker).

The rationale behind the majority rule's commencement of the statute of limitations on the date the plaintiff discovers the adverse employment action is that "when an employee knows that he has been hurt and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose . . . [because h]e knew the stated reason for [the adverse employment action] and could assess its legitimacy." *Morris*, 27 F.3d at 750. Like all other causes of action, "the plaintiff need not know all the facts that support his claim in order for countdown to commence." *Id.* "To allow plaintiffs to raise employment discrimination claims whenever they begin to suspect that their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaints." *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992). The United States Supreme Court has explained that statutes of limitation "protect employers from the burden of defending claims arising from employment decisions that are long past." Furthermore, equitable principles, . . . protect plaintiffs when it would be unfair to enforce a statute of limitation against them. We agree with and adopt the overwhelming use of the majority rule commencing statutes of limitation . . . when a plaintiff knows or should know of the adverse employment action, regardless of whether the plaintiff then has or should have knowledge of the employer's discriminatory intent.

306 P.3d at 530 (some citations omitted).                                    ..

In marked contrast to those tort cases such as *Gaither*[20] where a plaintiff has no basis to know of his injury (surgical sponge left in body cavity), an employee or prospective employee knows of his injury immediately upon finding out that he or she was not hired or was terminated or otherwise discriminated against. Consequently, there is no

---

[20]*See* 199 W.Va. 706, 487 S.E.2d 901 (1997).

17

need to apply the discovery rule, whose purpose is to avoid barring a plaintiff from bringing suit who had no access to the facts underlying his claim–not the legal theories–upon which the claim will be pursued. *See Sattler v. Bailey*, 184 W.Va. 212, 219, 400 S.E.2d 220, 227 (1990) ("[M]ere lack of knowledge of the actionable wrong ordinarily does not suspend the running of the statute of limitations. . . ."); *see also Almond v. Unified School Dist.*, 665 F.3d 1174, 1176 (10th Cir. 2011) ("In the absence of contrary directives from Congress, the Supreme Court has read into federal statutory limitations period a relatively consistent rule. . . . [T]he clock starts running when the plaintiff first knew or should have known of his injury, whether or not he realized the cause of his injury was unlawful."); *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d 141, 144 (Tenn. 2001) (stating that while "employee may not know the true reason for the employer's adverse employment decision, or other facts that would tend to show the employer has behaved unlawfully[,]. . .'there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard'") (citation omitted). This distinction is decisive. There is simply no sound basis for applying the discovery rule in cases such as the one before us when the plaintiff not only knows of his injury–the non-attainment of employment–but he or she unequivocally knows the identity of the entity who caused his

injury. Given the availability of this crucial information, the discovery rule serves no useful purpose.[21]

Finally, we reject Mr. Metz' contention that "[p]olicy considerations favor tolling the statute of limitations until a plaintiff has knowledge that an employer's hiring decision was motivated by discriminatory bias." Concerns rooted in policy actually tilt in favor of disallowing the discovery rule to further the objective of statutes of limitation: "to compel the bringing of an action within a reasonable time." *Johnson v. Nedeff*, 192 W.Va. 260, 266, 452 S.E.2d 63, 69 (1994); *see also Morgan v. Grace Hosp., Inc.*, 149 W.Va. 783, 791, 144 S.E.2d 156, 161 (1965) ("The basic purpose of statutes of limitations is to encourage promptness in instituting actions; to suppress stale demands or fraudulent claims; and to avoid inconvenience which may result from delay in asserting rights or claims when it is practicable to assert them."). Absent the finality that statutes of limitation provide in cases such as this, employers would be forever subject to lawsuits as former employees or prospective employees could always assert that they only recently discovered the alleged discriminatory basis for bringing a HRA claim. The Legislature has determined that these actions must be brought in a prompt fashion to avoid stale claims and the attendant issues

---

[21]While not relevant to responding to the questions before us, we cannot fail to observe that Mr. Metz was fully apprised of the alleged age-based animus of EAC's decision within the two-year limitations period. He simply chose not to institute his state claim within that two-year period, opting instead to file a federal claim.

19

such as defunct companies, unavailable witnesses, faded memories, and lost records, that

result from extended delays in pursuing relief. As this Court wisely recognized in *Perdue*

*v. Hess*, 199 W.Va. 299, 484 S.E.2d 182 (1997):

> "Statutes of limitation are statutes of repose and the legislative
> purpose is to compel the exercise of a right of action within a
> reasonable time; such statutes represent a statement of public
> policy with regard to the privilege to litigate and are a valid and
> constitutional exercise of the legislative power."

*Id.* at 302, 484 S.E.2d at 185 (quoting Syl. Pt. 1, *Stevens v. Saunders*, 159 W.Va. 179, 220

S.E.2d 887 (1975)). Moreover, if this Court were to apply the discovery rule to a HRA

cause of action, we would be improperly expanding the limitations period beyond the time

period established by the Legislature.[22]

Upon a thorough examination of this issue, we are not persuaded that the

discovery rule should operate to prevent the running of the limitations period in employment

discrimination cases until the employer's alleged discriminatory animus becomes known.

Accordingly, we refuse to apply the discovery rule to actions brought under the HRA. This

result is compelled by the purpose of the discovery rule–to toll the running of the applicable

---

[22]In contrast to the Medical Professional Liability Act, W.Va. Code §§ 55-7B-1 to -12 (2016), where the Legislature chose to include a discovery provision within the act, the HRA contains no comparable provision. *See id.* at § 55-7B-4. Declining to judicially "append to § 626 [of the EEOC] what Congress did not place there," the Fourth Circuit commented that "when Congress has intended a discovery rule, it has proven capable of writing one." *Hamilton*, 928 F.2d at 88.

statute of limitations until the plaintiff discovers his or her injury and the identity of the injury-causing entity. The injury in this case was EAC's non-hiring of Mr. Metz. Apprised of EAC's decision not to hire him, and given his membership in a protected class, Mr. Metz was armed with sufficient facts to further investigate whether his age was the basis for the adverse employment decision.[23] *See Olson v. Mobil Oil Corp.*, 904 F.2d 198, 202-03 (4th Cir. 1990) (rejecting plaintiff's argument that knowledge of younger person's hiring was required to pursue age discrimination complaint, stating: "It is sufficient that Olson was on notice at the moment of his alleged constructive termination 'to inquire whether there was [a] discriminatory motive for the discharge.'") (quoting *Hamilton v. First Source Bank*, 895 F.2d 159, 164 (4th Cir. 1990)); *accord Hulsey*, 43 F.3d at 558 ("'We may presume that many facts will come to light after the date of an employee's termination, and indeed one purpose of a charge is to initiate the process of uncovering them.'") (quoting *Olson*, 904 F.2d at 203). Consistent with the weight of authority on this issue, we hold that the statute of limitations for employment discrimination cases brought to enforce rights under the HRA, including allegations of discriminatory failure to hire, is not tolled by the discovery rule until a plaintiff discovers the alleged discriminatory motive underlying the employment decision.

---

[23]And, as noted above, Mr. Metz actually had knowledge of EAC's alleged discriminatory animus within the controlling two-year period for instituting suit. *See supra* note 20.

21

## IV.  Conclusion

For the foregoing reasons, we answer the first certified question in the affirmative and the second question in the negative.

Certified questions answered.